## ADAMS v. HACKETT et al.

PER BURNETT, J.—In a case where one partner has filed his bill for a dissolution of the partnership and the appointment of a receiver, it seems that until a dissolution has been judicially declared, and a receiver ordered to make a pro rata distribution of the assets among the creditors, they are not prevented from resorting to adverse proceedings, and thereby gaining a preference.

The fact that the referee in the proceedings supplementary to execution was the clerk of the attaching creditor, is not any considerable evidence of fraud, when the limited duties of the referee are considered.

When the plaintiff proceeded under section two hundred and thirty-nine of the Practice Act, to examine his judgment debtor as to a judgment held by him against A, and after examination obtained an order to apply the same to the judgment of plaintiff, it seems that it is not necessary to make A a party to the proceeding.

Debts or credits are considered property in the statute. A judgment is a debt of record, and the parties to it are called judgment creditor and debtor.

Upon the application of the receiver in the suit for dissolution, he can obtain the necessary proceedings for procuring a correct application of the balance of a judgment held by the partnership against a third party, after paying the judgment creditor of the partnership.

PER TERRY, J.—A fund in the possession of a receiver can only be distributed by the order of the Court in whose custody it is, and no party can, by adverse proceedings, acquire a lien over it.

Where, however, it appears that the partners, parties to the suit for a dissolution, held a judgment against a third party, which was never reduced to the possession nor under the control of the receiver, the appointment of the receiver would not operate as an assignment or transfer of any property not so reduced to possession within a reasonable time.

PER MURRAY, C. J., dissenting.—The act concerning proceedings supplementary to execution, provides for two cases: First, when the debtor has property which he refuses to apply, etc., in which case he is required to be summoned, etc; and, second, where any person or corporation has the property of, or is indebted to, the judgment debtor, in which case such person, or debtor of the judgment debtor, must be summoned.

A judgment is not properly within the meaning of the act, which, being in derogation of the common law, must be strictly construed; and the case is not altered because the debtor of the judgment debtor does not complain that he was not summoned.

APPEAL from the Superior Court of the City of San Francisco.

On the 23d of February, 1855, the plaintiffs, Alvin Adams, I. C. Woods and D. H. Haskell, doing business under the firm name of Adams & Co., failed in business.

On the same 23d of February, Adams, one of the partners, filed a bill against Woods and Haskell, the other two partners, averring the existence of a partnership between them, and praying its dissolution.

By consent of Adams, Woods and Haskell, the plaintiffs in this suit, A. A. Cohen was appointed receiver in the suit between them.

Thus stood the suit between Adams, Woods and Haskell down to July 18th, 1855; no answer had been put in—no default taken—no trial had; the firm had not been dissolved, nor judicially ascertained to be insolvent.

The record details various steps in this suit between the partners, taken subsequent to July 18th, 1855.

The substance of them is, that Cohen was removed as receiver, and Naglee appointed in his place; and that, quite recently, the Court in which it is pending, has, without any default or decree of dissolution, ordered a reference to take proofs of outstanding claims against it. But the firm has not been judicially ascertained to be insolvent, nor has it ever been dissolved. The plaintiffs are still partners, and Naglee is their receiver or trustee, appointed in pursuance of their consent.

In May, 1855, the appellants, Hackett and Casserly, commenced suits against the respondents to recover the demands, and recovered judgments as follows, viz:

June 8—Hackett v. Adams & Co..............$8,333 36.
    "    "    Hackett & Casserly v. Adams & Co... 3,433 62.

On each of these judgments executions were issued to the sheriff of San Francisco (the county were Woods resided, the other parties being non-residents) and thereupon the judgment-creditors took proceedings to examine Woods, one of the judgment-debtors, and to compel satisfaction of the judgments out of their assets. Accordingly, on orders of the Court, Woods, one of the debtors, was brought before a referee appointed for the purpose, who was a former clerk of the judgment-creditors, and on being examined, disclosed the fact, that he and his co-partners, (the judgment-debtors,) the present plaintiffs, owned a certain judgment against one John Hastings for twenty-nine thousand dollars.

The referee decided that this judgment should be applied to the payment of the judgments due the appellants as above, and for that purpose directed Woods, on behalf of himself and the firm of which he was a member, to assign the said judgment to the appellants to be so applied, so far as necessary.

In pursuance of such order, Woods on the 18th of July, 1855, on behalf of himself and his copartners, assigned the judgment for the purpose, or trust above expressed.

Adams & Co., by Naglee, their voluntary receiver, come into Court and file a bill in equity to be relieved against this assignment; and the Court below gave them a decree setting it aside. From this decree the present appeal is taken. The

question presented is, whether the appellants acquired by their proceedings supplementary to execution, and the assignment made in pursuance to them, a lien on the Hastings judgment, or whether it still belongs to the plaintiffs in the suit or their receiver, Naglee.

*John K. Hackett* for Appellants.

The appellants present the following points:

1. It is clear that this question must be determined by the facts as they existed on the 18th of July, 1855, when the assignment was made; since that time neither party has gained or lost any rights.

What rights, in respect to this Hastings' judgment, had Cohen, (who was then receiver,) on the 18th July, 1855? In other words, what sort of a receiver was he? For that the rights and powers of a receiver vary according to the nature of the proceeding in which he is appointed, is well settled.

The answer is, that he was the voluntary receiver of the plaintiffs, appointed by their consent; he had just such rights and powers as their consent could give him and no more. The Court exercised no discretion in his appointment, never even decided to appoint a receiver, probably on the case presented by the bill, would have declined to appoint one; but the parties to a suit may, on filing a written consent, enter whatever order in the cause they choose, and they chose to enter this. As, however, their consent only binds themselves, so the order founded on it can effect none others than themselves.

Cohen, then, was receiver, or bailee, of the property of Adams & Co., for the benefit of Adams & Co. He was their mere servant, having just as much control over their property as they chose to confer upon him, and no more. To assert that such a receiver has any rights which can affect the remedies of creditors, is to affirm that A and B, being in partnership, can remove their property from the jurisdiction of the Courts, and the reach of their creditors, by a friendly suit between themselves, wherein they shall consent that C be appointed receiver, and this in the face of the thirty-ninth section of the insolvent law, and the decision of Cheever *v.* Hays, 3 Cal. R., 471; Brownell *v.* Curtis, 9 Paige, 211; Osborne *v.* Moss, 7 J. R., 161; Dorsey *v.* Smithson, 6 Harr. & John., 61.

2. It is contended, indeed, that a receiver, in a suit between partners for the administration of the assets of an insolvent partnership, acquires a right to the partnership assets superior to the partners themselves; but the cases cited in support of this doctrine only show that such becomes the case after a decree for dissolution and distribution; in other words, after the parties have lost all control of the cause, and creditors become privies to it under the decree. Warring *v.* Robinson, 1 Hoff.

13

Ch. R., 529; McCreedie *v.* Senior, 4 Paige, 378; Egbert *v.* Woods, 3 Paige, 521; Williamson *v.* Wilson, 1 Bland's Ch. R., 421, 424; Hannah K. Chase's Case, id. ib., 213; Ellicott *v.* U. S. Ins. Co., 7 Gill, 319. The case in which Naglee is receiver is entirely different, both in its character and its situation. In it no decree has ever been made—no default ever entered—no trial ever had—no insolvency ever ascertained—none even alleged.

The parties to the suit were still partners; the plaintiff could still withdraw his suit if he pleased. The suit was not, on the 18th of July, 1855, in a condition in which it was possible for creditors to acquire any privity with it, or any rights under it; of course, it could not affect their rights.

No matter what litigation arises between partners, the partnership continues up to the decree of dissolution, and the assets and property of the concern belong to the partnership up to that time.

See cases referred to on p. 529 of the decision of Warring *v.* Robinson, *supra.*

If a receiver be appointed in such a suit before decree, he is the mere bailee or trustee for the partners. They may reconcile their differences and dismiss him; if they agree upon the disposition of the property, or any part of it, he must so dispose of it. He is merely appointed as custodian of the property because the partners, who are its owners, differ as to its disposition.

After a decree judicially dissolving the firm and ordering the winding up of its affairs, the partners lose all such control, and the rights of the receiver then become very different: he takes possession then as the trustee, not only for the partners, but for creditors, and all others interested in the funds, which the Court takes upon it to distribute, in accordance with right and justice.

The foregoing considerations render it clear, that the Hastings judgment was not, on the eighteenth of July, beyond the reach of creditors of Adams & Co.; and this being so, it appears to us, that it practically decides the case; for the Court, finding a creditor in possession of a *chose in action* of his debtor, as security for his debt, will not surely order it to be re-assigned at the instance of the debtors, (or one claiming as their assignee,) except on condition of paying off the debt for which it stands as security. On these terms the plaintiffs could have had it at any time.

3. But assuming that it is material to ascertain how the appellants acquired their lien, we affirm, with confidence that their proceedings to acquire such a lien were entirely in conformity to law. In this connection, it becomes necessary to examine the statute.

In order to remove all misconception on this point, the appel-

lants distinctly state that they claim nothing under section two hundred and forty-one. They did not attempt to take proceedings under that section, and do not seek to uphold their proceedings by it.

What they do claim is, that, by proceedings taken under section two hundred and thirty-nine of the Practice Act, they acquired a valid lien on the Hastings judgment, for the sum of eleven thousand seven hundred and sixty-six dollars and ninety-eight cents, ($11,766 98,) with interest from June 8th, 1855, the date of their judgments for that amount; and that, until that amount be paid them, or collected by them out of the judgment, they are not bound to re-assign to the plaintiffs.

4. Having thus stated what rights the plaintiffs claim, before proceeding to examine the statute, we propose to consider how the matter would stand in the absence of the statutory remedies given by chapter eleventh of the Practice Act; and as that act was borrowed from the legislation of the State of New York, we naturally turn to the decisions of that State for light, both on the practice previously existing, under distinct equity and common law systems, and the practice introduced and substituted for it by the code, the provisions of which we have copied.

The following authorities are, therefore, referred to : 2 Barbour's Chancery Prac., 157 ; McArthur et al. v. Hoysradt et al., 11 Paige, 495 ; Long v. Majestre, 1 Johns. Ch. R., 305.

5. With this brief review of previous remedies, we proceed to examine chapter two of title seventh of the Practice Act, which was undoubtedly designed, like the New York Act, from which it is copied, " as a substitute for the remedy by creditor's bill."

Sec. 238 provides for the examination of a defendant after an execution has been returned, in whole or in part unsatisfied.

Sec. 239 provides that after the issuing of an execution, and before its return, the creditor may, on an allegation that his debtor has property which he unjustly refuses to apply to the satisfaction of the judgment, cause him to be examined on oath regarding it, before the Judge or a referee.

Sec. 240, after the issuing of an execution against property, permits the debtor's debtor to pay his debt to the sheriff.

Sec. 241 provides that after the issuing or return of an execution, upon an allegation that any person is indebted to the judgment debtor, in an amount exceeding fifty dollars, the Judge may order such person, or any officer of such corporation, to appear and be examined.

Secs. 242 and 245 provide generally for compelling the attendance of witnesses, in any of the cases specified.

Sec. 243 authorizes the Judge or referee to direct the application of any property brought to light by any of the various preceding provisions, to the satisfaction of the judgment.

Sec. 244 provides a mode of trial where the person alleged

(under Sec. 241) to be indebted to the judgment debtor disputes the debt.

These are all the provisions of the chapter, and it will be seen that they give three distinct remedies, viz.:

First. A general sweeping investigation, under section two hundred and thirty-eight, of the whole state of the judgment debtor's affairs; and the compelling a general assignment of his effects: the prerequisite to instituting this is simply an execution returned unsatisfied.

Second. The compulsion of the judgment-debtor, under section two hundred and thirty-nine, to apply some particular piece of property to the payment of the judgment. The prerequisite for this is that an execution shall have been issued, and an affidavit made that the judgment-debtor has property which he unjustly refuses to apply to the satisfaction of it.

Third. The compulsion of a debtor of the judgment-debtor, under sections two hundred and forty-one and two hundred and forty-four, to pay his debt to his creditor's creditor; and the prerequisite for this is, an execution issued, or returned, and an affidavit made that some third person (to be named) is indebted to the judgment-debtor.

In a proceeding under section two hundred and thirty-nine, the judgment-creditor, in order to institute the proceeding, makes affidavit "that he has a judgment against A B, on which an execution has been issued, and that A B has certain property, to wit, such and such chattels, or such and such promissory notes or judgments, which he unjustly refuses to apply to the payment of such judgment."

If he proceed under section two hundred and forty-one, his affidavit must be quite different; it must be, that he has a judgment against A B, on which an execution has been issued, (or issued and returned,) and that C is indebted to the said A B, in an amount exceeding fifty dollars.

In the proceeding under section two hundred and thirty-nine, the first order made by the Judge is, that the judgment-debtor appear and be examined.

In that under section two hundred and forty-one, the first order is, that C, who is alleged to be indebted to the judgment-debtor, appear and be examined.

Nothing can, we think, be clearer than that these are two remedies entirely distinct from one another; different in their commencement, different in their progress, and different in their conclusion. The affidavit in each case is different, and the order founded on it different.

6. Having thus seen that the remedies under sections two hundred and thirty-nine and two hundred and forty-one are entirely distinct, it remains to be ascertained whether the appellants' proceedings, under section two hundred and thirty-nine, were

valid. And, with respect to this, we simply observe that, on familiar principles, they are so, unless the affidavit on which they were founded, and with which they commenced, was insufficient to give the Court jurisdiction. The regularity or propriety of the subsequent proceedings cannot be inquired into collaterally. Buttler v. Potter, 17 J. R., 145; Suydam v. Keys, 13 ib., 444; Easton v. Gallender, 11 Wend., 92; Van Steenbergh v. Bigelow, 3 Wend., 42; Cow. Just., 32; Grignon's Lessee v. Astor, 2 How. S. C. R., 319; Atkins v. Kinnan, 20 Wend., 246.

It has also been suggested that a judgment is not the sort of property intended to be reached by supplementary proceedings, and that the referee should not have ordered it so applied. We answer, this objection never could have been urged with success. See Edmeston v. Lyde, 1 Paige, 641; 2 Barb. Ch. Prac., 152. But if it could, the answer to it now is the same as above, viz.: that this is not the time or place to urge it. If the referee erred, his order should have been appealed from; it cannot be attacked in this collateral way.

We have thus shown, that by the suit brought by Adams against his partners, and the appointment of Cohen as receiver, the assets of Adams & Co. were not withdrawn beyond the reach of creditors; that, independent of our statute, the mode of reaching such assets would have been by creditor's bill; that in case of proceeding by creditor's bill the debtor's debtor was not a necessary party; that our "proceedings supplementary to execution" are a substitute for the remedy by creditor's bill, and that the proceedings taken in this case were in strict conformity to the two hundred and thirty-ninth section of the Practice Act. That a judgment-creditor, by the filing of his bill and service of process, (or a diligent attempt to serve it,) acquired a lien on the equitable assets of his debtor, and a right to priority in payment out of them, is well settled. Corning v. White, 2 Paige, 567; Albany City Bank v. Schermerhorn, 1 Clarke's Ch. R., 297; Boynton v. Ransom, id., 584; and proceedings supplementary to the execution undoubtedly now confer the same right and priority. The law still rewards the diligent creditor. Porter v. Williams et al., 5 Howard's Pr. R., 441, (444.)

In reply to the suggestion thrown out by his Honor, the Chief Justice, from the bench, that a judgment is not the sort of property intended to be reached by a proceeding under section — of "proceedings supplementary to execution," I beg leave to observe—

1. That the word "property" is very broad and comprehensive, and a "term of the largest import," as in the case of Whiton v. The Old Colony, 2 Metcalf, p. 1, where it was held that the term "property" included current bank bills, etc. The natural meaning would seem to include any species of valuable

thing. Doe *ex dem* Wall *v.* Langlands, 14 East, 370; see, also, 17 Johnson R., Jackson *ex dem.* Pearson *v.* Housel, p. 281.

Burrill, in his Law Dictionary, thus defines the word property : " That which is proper, or peculiar to one, that which belongs to one, that to which one has an unrestricted and exclusive right, including all that is one's own, whether corporeal or incorporeal.

" Property, in this sense, denotes the things themselves, which are the subjects of right, as in the expressions 'real property,' 'personal property.'"

" The right by virtue of which a thing belongs to one, or is one's own ; ownership ; dominion ; the unrestricted and exclusive right to a thing; the right to dispose of the substance of a thing in every legal way, to possess it, to use it, and to exclude every one else from interfering with it." 1 Mackeld. Civ. Law, 269, § 259. This is the strict legal sense of the word, as in the expressions, " property in land," " property in chattels."

" The right of property consists in the free use, enjoyment and disposal of all a person's acquisitions, without any control or diminution, save only by the laws of the land.

" Property is the highest right a man can have to anything, being used for that right which one has to lands or tenements, goods or chattels, which no way depends on another man's courtesy." Vide Bouvier's Law Dictionary, Tit. " property," " things."

Webster, in his Dictionary, defines " property " to be " the thing owned ; that to which a person has the legal title, whether in his possession or not."

In the New York Act, from which ours is borrowed, the framers of it have defined the various terms used in it. Our Legislature has not, it is true, re-enacted those definitions, but when they employed the identical words of the New York Act, it can hardly admit of a doubt that they used them in the same sense as used in it.

It is, therefore, clearly intended as " *nomen generalissimum;*" the broadest term the Legislature could use. By comparing the two hundred and ninety-second section of the New York code, with the two hundred and thirty-eighth, two hundred and thirty-ninth, and two hundred and forty-first of our Practice Act, it will be seen that the words used are identical; the meaning of them, in the one case, being defined, must, I think, define it in the other.

*H. P. Hepburn* for Respondents.

The appellants contend, first, that they had a right, as creditors of Adams & Co., to pursue their legal remedies against the assets of Adams & Co., notwithstanding the bill of Adams against Woods and Haskell for a dissolution and account.

The answer to this objection is, that the creditors of Adams &

Co. were in privity with, and had an interest in, the partnership suit of Alvin Adams *v.* Woods and Haskell the very day it was brought, and from that day forth the power of the partners by assignment in any other way to interfere with or disturb that interest was gone forever.

As a general rule, it is true that the creditors of a partnership have no interest in a partnership suit until after a decree of dissolution, and that, in the meantime, one creditor may go ahead against the partners and get an advantage if he can. The reason of this is, that until a decree of dissolution *non constat* that that the partnership is insolvent, or that the Court will meddle with its affairs either for account of the complaining partner or the creditors; and at such a stage of the proceedings, the creditors, having no interest in the suit, and not being parties to it, have each of them the obvious right to sue for his own account. That, however, is not this case, for here we have not only the plaintiff, Adams, but the defendants, Woods and Haskell, on the day after the suit brought, consenting to close their business, to put their assets into the hands of the Court, and out of their own power, for the purpose of closing the partnership concerns and paying the partnership debts. From the moment, therefore, that this consent was filed, the dominion of the partners over the partnership assets was voluntarily surrendered, and the right of the creditors in those assets attached. See the reasoning of the Court in Warring *v.* Robinson, 1 Hoffman Ch. Rep., 531 and 532; also, 1 Blands. Ch. Rep., Williamson *v.* Wilson.

But supposing the plaintiffs to be wrong on this point, the defendants have no case, for the reason that the proceedings supplementary to execution were all *coram non judice,* and void.

By section two hundred and sixty-three of the Practice Act, "the judge or referee may order any property of the judgment-debtor, not exempt from execution in the hands of such debtor, or other person, or due to the judgment-debtor, to be applied towards the satisfaction of the judgment."

Now, the "other person" who owes a debt "due to the judgment-debtor" is not Woods, for he is the judgment-debtor, but Hastings, and the proceedings, therefore, and the order under them, should have been against Hastings instead of Woods. He is the party who owes the obligation, and he is the party who should be called before the Court, and who, unless he can show a good reason, will be condemned to give the relief sought; in other words, will have judgment rendered against him. And what sort of a judgment? A judgment which transfers a debt well secured, for upwards of twenty-nine thousand dollars, to pay a debt of some eight or ten thousand dollars. Woods, for himself and Adams & Co., undertakes to assign, and the defendants to hold, the entire judgment recovered against Hastings. Can the Court consider any such proceeding as this anything

but a voluntary assignment made by an insolvent debtor?    Else
is it not idle to endeavor to protect it under the statute regu-
lating proceedings supplementary to execution?

The statute is in derogation of the common law, and therefore
should be followed, *stricti juris.*   It is no answer to say that the
statute contemplates a proceeding both against the debtor and
third persons, and that third persons are allowed, but not re-
quired, to be summoned.    The test in the case is, whether or not
relief is to be obtained against them; and when it is, the Court
will see that this relief is what it ought to be; that is to say, is
sufficient to extinguish the claim of the party complaining; but
here the party complaining has got an assignment which will
pay him three for one—he has got it under color of law, but
really in disregard of it.    Suppose the Court sustain his title
thus acquired, he can then issue execution for three dollars
where one is due to him.    If he collected the money, it is true
that Adams & Co. could sue for the overplus; but if the defen-
dants should become insolvent, or leave the State, the debt
would be lost, and the creditors of Adams & Co. are to take the
risk of this.    It is said that third persons who are in debt to
judgment-creditors, are not necessary parties in judgment-credi-
tors' bills.    No doubt this is true, for there are many cases of
creditors' bills where the relief sought is not against third per-
sons, but against the judgment-debtor himself.    And cases of
this sort are contemplated by our own statute; but where the
relief sought is against a third person, I apprehend it will be
found that the party to be affected by it is a necessary party.
To suppose the contrary is against all principle; but whether it
be or not, the letter of our statute is clear.

*Peyton, Duer, Lake & Rose,* for Appellants.

It is said that the order requiring the judgment to be assigned
is void, for the reason that the judgment-debtor (Hastings) was
not made a party to the proceeding.

To sustain this proposition, it is requisite to establish two
things:

First, That the statute requires the debtor of the judgment-
debtor to be made a party; and,

Second, That the omission to make him a party, deprives the
Court of jurisdiction over the judgment-debtor, and renders the
whole proceeding *coram non judice.*

The Practice Act, in the chapter in question, contemplated
two distinct proceedings.

The creditor may have, at his option, an order for the "judg-
ment-debtor to appear and answer concerning his property," and
under such order, any property whatever belonging to the debt-
or, and in his hands, (including of course, *choses in action,*) may
be applied to the satisfaction of the judgment; or he may have

an order for any person, who has property of the judgment-debtor, or who is indebted to him, to appear and answer, and thereupon any property in the hands of such third person, may be, in like manner, applied to the satisfaction of the judgment.

Both these proceedings are distinct, and there is nothing requiring, or even permitting, a third person to be made a party, where the proceeding is against the judgment-debtor, nor the judgment-debtor to be made a party, where the proceeding is against a third person.

Such joinder not being authorized, would be irregular.

Third persons are allowed to be summoned for the benefit of the creditor; not required to be summoned for their own protection.

When they have in their hands property belonging to the judgment-debtor, its possession can only be obtained by summoning them; and when they are indebted to the judgment-debtor, their testimony may be needed as to the fact of indebtedness, its amount, and as to any payments that may have been made, or set-offs that may exist.

But an order made that the judgment-debtor shall assign to the creditor any debt or demand, in no way affects any right of the person from whom such debt or demand may be due; and there is, therefore, no reason why he should be made a party to the proceeding. The effect of the order is simply to transfer the claim, to substitute another person as creditor, and the situation of the debtor is, in every other respect, unchanged. He is deprived of no defence, legal or equitable, and is subjected to no inconvenience. He would, of course, be protected in any payment made before notice of the assignment. Choses in action may be levied on, (Practice Act, § 217,) and, in such cases, no notice is given to the debtor. The supplementary proceeding which we are considering, is only a new mode of obtaining the effect of an execution where that remedy has failed, and notice is no more necessary in the one case than in the other.

It is said that the proceeding in question is a substitute for a creditor's bill, and that in such proceeding the debtors of the judgment-debtor must be made parties. The rule in equity, however, is otherwise, and the analogy, therefore, sustains the argument of the appellants. 2 Barb. Ch. Pr., 157; Stafford v. Mott & Comstock, 3 Paige's Ch. Rep., 100; Long v. Majestre, 1 Johns., 306; Hammond v. Hammond, 2 Bland, 347; Holland v. Prior, 7 Cond. Ch., 22.

But suppose the statute had expressly required that the debtor should be made a party; it would by no means follow that an order made on the judgment-debtor would be void.

We are not seeking to give the order of the judge the effect of res adjudicata, so far as any right of the debtor, Hastings, is concerned. If that order, in any respect, affected his rights, he

might object that he was not bound, because he had no notice. But the order in no respect affects his rights, and it is not he, but the judgment-debtor, who objects. The objection that there ought to have been other parties defendant, must be taken by demurrer or plea in abatement; it does not go to the jurisdiction of the Court. This is the rule at common law, and it is not changed by the Practice Act. See Act, §§ 40, 44, 45.

And in all special statutory proceedings, if the Court once gain jurisdiction, no subsequent error, or irregularity, can be taken advantage of, except by writ of error or appeal.

BURNETT, J.—The first question presented by the record, and upon which the decision of the Superior Court of San Francisco was predicated, is whether the property, in the judgment of Adams & Co. against Hastings, vested in the receiver appointed by the Court in the case of Alvin Adams against his copartners, so as to prevent a creditor of the firm from gaining any advantage over other creditors by adverse legal proceedings. The Court below held that it did, and that defendants gained no priority or lien by virtue of their proceedings against Adams & Co., and that, therefore, the judgment against Hastings was rightfully under the control of the receiver, who represented the copartners as well as their creditors.

It appears that the complaint of Alvin Adams was filed for a dissolution, and prayed for the appointment of a receiver, and the application of the assets of the firm to the payment of the partnership debts. It was only a case *for a dissolution*—not one stating a previous dissolution. It is true, that in the case of Williamson v. Wilson, Bland R., 418, the Chancellor held that insolvency operated as a dissolution of itself, and that in such a case, a Court of Equity, when called upon to administer the funds, would do it upon the principle of a *pro rata* distribution. But in the case of Alvin Adams there is no sufficient allegation of the insolvency of the firm of Adams & Co., and had there been such an allegation, still the creditor would not have been deprived of his remedy, as was held in the case cited of Williamson v. Wilson.

The case of Warring v. Robinson and others, 1 Hoff. Ch. Rep., 524, is mainly relied on by the plaintiffs in support of the opinion of the Court below, upon the point now under consideration.

The Chancellor says: " In the case of Pratt v. Robinson, July, 1839, I decided that a judgment obtained adversely against the partners was entitled to such priority." And referring to the case of McCrudix v. Senior, 4 Paige, 378, the Chancellor says: " A bill was filed by one partner, alleging a violation of the partnership articles, by applying the effects of the firm to their private transactions, and seeking a dissolution of the partnership, an injunction, and receiver. After service of the injunction, one

of the partners confessed judgment to a partnership creditor. The injunction prohibited him from intermeddling with the property and effects. The Chancellor held, that the injunction did not prohibit the partner from giving a preference to a *bona fide* creditor of the firm, and that the facts stated in the bill did not entitle the complainant to an injunction to restrain the creditors of the firm from proceeding at law to recover their just debts, or to restrain any member of the firm from confessing a judgment to such creditors, so as to give them a preference in payment." "It is true, the appointment of a receiver, in a cause where a bill is filed for a dissolution, is not a dissolution."

And in the case of Egbert *v.* Wood, 3 Paige, 521, it was said by Chancellor Walworth : " So by the law merchant, although the effects of a copartnership upon the insolvency of the firm were in equity considered a trust fund for the payment of the partnership debts, and any of the partners might apply to this Court for the purpose of having the partnership funds thus appropriated rateably among all the creditors, yet either of the partners, before the dissolution of the copartnership, or all of them, afterwards, might unquestionably exercise the right of appropriating those funds to the payment of one creditor in preference to another."

In Hannah K. Chase's case, 1 Bland Ch. R., 213, it was held, " that the appointment of a receiver does not involve the determination of any right, or affect the title of either party in any manner whatever." And in the case of Williamson *v.* Wilson, it is held, that " a receiver is an officer of the Court ;" " but his appointment determines no right, nor does it affect the title of the property in any way."

From these cases, it seems to be settled that until a dissolution has been judicially declared, and a receiver ordered to make a *pro rata* distribution of the partnership assets among the creditors, they are not prevented from resorting to adverse proceedings, and that when a creditor does resort to such proceedings, he may thereby gain a preference over those creditors who are less diligent.

And the reasons in support of these positions would seem to be ample. The proceeding is by one partner against the other, for his own security, more than for the benefit of the creditors. So long as no decree of dissolution is made, the case is under the control of the plaintiff, and he may at any time, before judgment, dismiss the proceedings. The power of the plaintiff to dismiss his case, leaves the rights of creditors, so far as proceedings in that case are concerned, entirely at the mercy of the plaintiff. Now, can the partners, or either of them, by their own act, place the creditors in this position ? It would seem not.

It is true, the decision of the Chancellor, in Warring *v.* Robinson et al, would seem to conflict with this view ; but in that case

the decision seems to rest upon the ground that the *confession* of the judgment by Robinson, in favor of Warring, after the appointment of the receiver, was insufficient, although Robinson had been regularly served with process. And in the synopsis of the case, it is said, "that the appointment of a receiver, in a suit for an account and dissolution, or staying a prior dissolution, prevents one partner from giving any preference among the creditors, although it appears that an injunction would not be sufficient," and "that such appointment does not prevent a creditor from obtaining a preference by adverse proceedings."

In that case, the Chancellor also laid some stress upon the fact found by him, that Warring·"knew of the appointment of the receiver before he obtained his judgment."

But it is not perceived how this knowledge can have much bearing upon a case like the present. If the creditor is not prevented from proceeding against the partners *after* the appointment of the receiver, and *before* a decree of dissolution, upon the ground that the case is under the control of the parties, and especially of the plaintiff in the suit for a dissolution, then the knowledge of such proceedings, and of the fact that they are thus under the control of the partners, should not prevent the creditor from resorting to adverse proceedings; on the contrary, such considerations should induce him to proceed promptly.

But in the present case the judgments of Hackett, and of Hackett and Casserly against Adams & Co., were not obtained by *confession*, they were regularly obtained; and so far as their regularity is concerned, they are not subject to the objection made against the judgment of Warring. These considerations dispose of the first point.

The next question that arises upon the record, is, whether defendants had gained any priority by their judgments against the firm, and proceedings supplementary to execution. And this question involves the determination of two points; First, Whether the judgments of Hackett, and of Hackett and Casserly were fraudulent; and second, Whether their proceedings supplementary to the issuing of execution were void.

As the Court below based its decision on the ground already disposed of, the present points were not decided.

The plaintiffs in their brief, take the ground that, "the judgments of Hackett, and of Hackett and Casserly, are fraudulent in fact." In support of this ground they refer to many facts, and among others, they state that "some hundred attachment suits were immediately commenced by creditors all over the State, and all these suits were brought by Hackett and Casserly." But upon referring to the record at page 50, it appears that this statement is a mistake of counsel, and that Hackett and Casserly did not bring the suits, but were the attorneys of Adams & Co.

Adams .v Hackett.

. The other facts relied upon to sustain the allegation of fraud under the circumstances stated in the record, do not seem to be sufficient; when fairly considered, they entirely fail to sustain the charge. The most material circumstance was the fact, that the referee was the clerk of the defendants, Hackett and Casserly; but when the nature of the duties of a referee in such a case is considered, this circumstance is not any considerable evidence of fraud. His duty was very limited and plain, and his acts subject to the revision of the Court. There is no ground for charging fraud in fact, so far as his acts are concerned. As to the delay in bringing suits, and filing the report of the referee, these circumstances do not afford any good ground for the inference of a fraudulent intent. There seems to have been much delay and some negligence in the case of Adams against his co-partners, as well as in the cases of Hackett and Casserly.

The decision of the second point, which regards the validity of defendants' proceedings supplementary to the execution, must depend upon the provisions of our Practice Act, and the Equity practice in similar cases.

In construing this act, it is proper to remember that two of the leading ends contemplated by the system, are simplicity and economy, and it would seem, therefore, to be a just conclusion, that it should receive a liberal construction; and that the main intention and spirit of the act should be fairly carried out.

In reference to the chapter prescribing the mode of proceedings supplementary to execution, it seems clear that those provisions were intended as a substitute for what was called " a creditor's bill." This is so stated by the Practice Commissioners in their original note to this chapter in the New York Code. The design was, in the language of those Commissioners, " to furnish a cheaper and easier method." The different sections of this chapter, when taken together, form a consistent and harmonious whole; and when fairly and liberally carried out, afford a cheaper and easier method than the former one by creditor's bill.

The two hundred and thirty-eighth section authorizes a general examination of the defendant *after* issue and *return* of execution unsatisfied. The two hundred and thirty-ninth section authorizes the examination of the defendant at *any time* after the issue of execution. The two hundred and fortieth section allows debtors of the judgment debtor to pay the Sheriff. The two hundred and forty-first section provides a remedy against persons having property of the debtor in possession, or who are indebted to him.

The main difference between sections two hundred and thirty-eight and two hundred and thirty-nine, consists in this, that the latter allows the plaintiff to proceed *earlier* and in a more *stringent* manner. Under one section the creditor can only examine

the judgment debtor *after* execution returned, while under the other he can examine him *before* the return, and also have him arrested upon a proper showing.    But under both these sections the same property may be made liable when ascertained.

The provisions of section two hundred and forty-three are general, and refer to the cases arising under sections two hundred and thirty-eight, two hundred and thirty-nine, and two hundred and forty-one; and have reference to the orders the Court may make for the application of the property discovered.

The proceedings of Hackett and Casserly were under the two hundred and thirty-ninth section.    Their affidavit was regular and their judgments regular.    The order of the Court made upon the affidavit was regular.    It would seem clear that so soon as the proceedings supplementary to execution were instituted before the District Court, that Court obtained jurisdiction over the case, and had authority to proceed and apply the property of the judgment-debtors to the satisfaction of the judgments of the present defendants.    The Court appointed a referee, who proceeded to examine the defendant Woods, and upon that examination ordered Woods for himself and the firm of Adams & Co., "to apply the property described to the satisfaction of the judgments" of Hackett and Casserly.

When the referee had examined Woods, and made the order for the application of the Hastings judgment to the satisfaction of the judgment of Hackett and Casserly, then the property was in the custody of that Court, and Hackett and Casserly obtained a lien upon the same to the extent of their judgments, unless the proceedings before the referee were so defective as to render them void.

The order of the referee upon its face, though not in the best form, substantially complies with the intention of the statute. The order would have been in more proper form if it had been simply, that the property described should be applied towards the satisfaction of the judgments, in such manner as the Court should direct.    And this results from the language of the statute, the object contemplated by it and from analogy.    The property discovered in proceedings supplementary to execution is in the custody of the law, and must be applied under the order of the Court, and not given up to the creditor except in proper cases.    Had the judgment against Hastings been for the same or a less amount than the Hackett & Casserly judgments, then upon their consent the Court could have ordered that the Hastings judgment be assigned in full satisfaction.

The objection that Hastings was not made a party, does not seem to be well founded.

The creditor has the election to proceed against the debtor of the judgment-debtor, under the provisons of the two hundred and forty-first section, or he may proceed against his immediate

debtor, either under section two hundred and thirty-eight, or two hundred and thirty-nine.   Putting all the sections together, the remedy of the creditor is more full and better adapted to the different states of case.   In this case, Hastings was not at the time in the State.   To require a publication of notice in a newspaper would add greatly to the delay and expense, for no practical benefit.   And it may often happen that a judgment debtor may have a negotiable promissory note in his possession which he refuses to apply to the satisfaction of the judgment.   How is the debt to be made available?   Not by summoning the maker.   It can only be done by proceedings under section two hundred and thirty-eight, or two hundred and thirty-nine.   And in many cases the judgment debtor may have several claims against different persons, and it may defeat the ends of justice entirely to require all of them to be made parties.   The debtors of the debtor might be entirely willing to pay the sheriff, if allowed to do so by the order of the Court.   And when the proceedings are under section two hundred and thirty-nine, the creditor can certainly reach any property liable to execution.   Is then a judgment *property ?*

Blackstone divides personal property into two kinds; property in possession and property in action, and he says that the "owner may have as absolute a property in, and be as well entitled to, such thing in action, as to things in possession."   2 Com., 388, 397.

The definition of personal property in the New York Code, includes "things in action and evidences of debt," and the word *property*, as used in the act, includes property real and personal. Although this definition is not found in the Practice Act, yet as these provisions of our act are taken from that of New York, the terms must be used in the same sense in both codes.

And this is made clear by the language of the Act itself.   Section two hundred and seventeen subjects "debts and credits, and *other property*," to execution; section two hundred and twenty, requires the sheriff to "collect or sell the things in action."   So the two hundred and forty-third section authorizes the "Judge or referee to order any property of the judgment-debtor, not exempt from execution, in the hands of such debtor or any other person, or *due* to the judgment-debtor, to be applied toward the satisfaction of the judgment."   Debts or credits due to the debtor, are here considered property, and can be applied toward the satisfaction of the judgment.   A judgment is a debt of record, and the parties to it are called judgment, creditor, and debtor.

In proceedings under a creditor's bill, it was unusual to make the debtor of the judgment-debtor a party.   But in several cases it has been held that he was not a necessary party, and that when made a party, he was generally entitled to his costs.   2

Barb. Ch. Prac., 157; 3 Paige, 100; 11 Paige, 495; 1 John. Ch. R., 305.

As to whether the debtor of the judgment-debtor be made a party, seems to rest, in most cases, in the will of the plaintiff; he is the party generally most interested. In the case of Hastings, it cannot well be seen what injury could result to him. His right to show any good defence against the judgment, is in no way affected. If Hackett and Casserly choose to rely upon the judgment against him as a means of payment, without knowing whether the judgment was paid or not, then they are the parties who incur the risk of loss. And there would seem to be good sense as well as good economy in permitting the application of such judgment, without the expense and delay of making him a party. The two creditors did not desire it, or need it, and their failure to make Hastings a party has not diminished the judgment, increased the costs, or in any way affected Hastings, or injured the other debtors or creditors of Adams & Co.

As to the effect of the assignment made by Woods to Hackett and Casserly, it is sufficient to say that it did not follow from the report of the referee that it should have been made, and that the judgment of Hastings is still under the control of the District Court.

Upon the application of Naglee to that Court, such proceedings can be had as will procure the correct application of the balance of the Hastings judgment to the general creditors of Adams & Co.

The judgment of the Court below is reversed, and the case of plaintiffs dismissed, with costs.

TERRY, J.—While concurring in the conclusion of my associate, I do not assent to the first proposition contained in the opinion in this cause.

In the case of the Receiver of Adams & Co. v. Roman et al., decided at the January Term, 1856, the assignees declined to pay the funds of Adams & Co., in their hands, to the receiver, Naglee, on the ground that the funds had been attached by the creditors of that firm. This Court said: "It is no answer to this to say that the fund has been attached by the garnishments of the creditors of Adams & Co.. It was not the subject of attachment. It was already in the hands of a receiver before any attachment issued. The receiver is the officer of the Court, and the fund in his hands is in Court in the custody of the law, and can only be disposed of by the order and direction of the Court; nor (as was contended at the bar) is its disposition subject to be affected by any action of the immediate parties to the suit."

The bill was filed for the purpose of seizing the assets of the partnership, and having them distributed to the creditors. This purpose, a Court of Chancery will carry out, without regard to

Adams v. Hackett.

any attempt on the part of the partners to evade or defeat it. It was the duty of the Court, as soon as this bill was filed and the property was under its control, to require all the creditors of Adams & Co. to appear, within a given time, before a master, to be appointed for the purpose, and have their claims audited under such rules and regulations as to notice, as would secure a fair hearing and a just account.   Upon the report of the master, and its confirmation, the fund would then be distributed *pro rata* among the creditors whose claims were allowed.

I see now no reason to doubt the correctness of the principle then announced.   A fund in the possession of the receiver can only be distributed by order of the Court in whose custody it is, and no party can by adverse procedure acquire a lien on such funds.

In this case, however, it does not appear that the judgment of Adams & Co. *v.* Hastings, was ever reduced to possession by the receiver, and the receiver testifies that he exercised no control over it.   Conceding then, that the order appointing a receiver operated as an assignment of the property of the insolvent firm, the assignment would not, under our statute operate to transfer any property which was not within a reasonable time, reduced to actual possession by the assignee.

MURRAY, C. J.—It is my misfortune to be compelled to differ from my Brothers in this case, and I shall briefly state the ground of my disagreement.

The act concerning proceedings supplementary to execution, provides for two cases:

1. Where the debtor has property which he refuses to apply to the satisfaction of the judgment, in which case he is required to be summoned, and the Court or Judge is authorized to direct the appropriation of such property; and—

2. Where any person or corporation has property of or is indebted to the judgment-debtor; in which case the person holding said property, or the debtors of the judgment-debtor is required to be summoned.

The affidavit of the parties sets forth, that Adams & Co. have property which they unjustly refuse to apply to the satisfaction of the affiant's judgment.

I am of opinion that a judgment is not property within the meaning of the act; it certainly was not at common law; it was but the evidence of indebtedness.   Again, the act concerning proceedings supplementary to execution gives a new remedy, and by all rules of construction being in derogation of the common law, must be strictly pursued.   It is no answer or argument that Hastings the debtor of the judgment-debtor does not complain in this cause.   The symmetry of the act should be preserved, and in some future case it will be found necessary to a

14

full adjustment of the rights of parties to adhere to the strict letter of the statute.