## CRANDALL *v*. BLEN.

QUERY: Whether a chose in action, as a note or judgment, and the like, calling for a definite sum without condition, is the subject of levy and sale?

And if so, then *query:* Whether such levy and sale can be made without actual possession of the chose by the officer?

Contingent and complicated contracts cannot be levied upon and sold without being in the possession of the officer at the sale, to be exhibited to the bystanders and assigned to the purchaser, unless a full and accurate description of the particular interest and chose in action, with all of its conditions and covenants, and a full explanation of the facts determining the value of the chose be given by the levy and announced at the sale.

APPEAL from the Eleventh District.

Bill in equity to compel defendant to deliver to plaintiff a certain contract or agreement between defendant and the Bear River and Auburn Water and Mining Company, set forth in the opinion of the Court. Complaint alleged plaintiff to be the owner of said agreement by virtue of the Sheriff's sale and return, also named in the opinion; that he had demanded of defendant the delivery to him, plaintiff, of the same, which demand was refused.

Plaintiff further averred, that defendant had, previous to said sale, brought suit on said agreement in said Court against said company, which suit was then pending; that defendant was insolvent, and if he were permitted to collect the money due on said agreement, plaintiff would be irreparably injured.

The prayer was for the delivery of the agreement, substitution of plaintiff in the place of defendant in said suit, and an injunction against any further proceedings by defendant therein.

The answer denied most of the allegations of the complaint, and averred that the Bear River and Auburn Water and Mining Company had broken said agreement, to the damage of defendant, in the sum of thirteen thousand dollars, and that suit therefor was pending; that plaintiff is, and had been, for three years past, Secretary of the company and a large stockholder therein. The answer further charges, in substance, fraud and conspiracy on the part of plaintiff and the company, in breaking said agreement and in the issuance of the execution and the sale referred to, the object being to cheat defendant out of his rights by litigation and a secret sale of his property, of which sale neither he nor his Attorneys knew anything until after it was over. The case was tried by the Court, and defendant had judgment. Plaintiff appeals.

*E. B. Crocker*, for Appellant.

I.   Choses in action are liable to sale on execution under the statute.

Section 124 of Practice Act provides that "all debts due the defendant and all other property" may be attached.

Section 217—"Debts and credits and other property *not capable of manual delivery*" may be levied upon by execution.

Section 220—Directs the Sheriff to "collect or sell the things in action" levied upon.

Section 227—Provides that the purchaser of personal property capable of manual delivery shall receive the possession, and also a certificate of sale if he desires it; but

Section 228—Provides that the Sheriff "shall execute and deliver to the purchaser of personal property *not capable* of manual delivery a certificate of sale and payment. Such certificate shall convey to the purchaser all right, title, and interest, which

Crandall v. Blen.

the debtor has in and to such property on the day the execution was levied."

This Court has already decided that judgments, notes, and other choses in action, are liable to sale on execution under these provisions of the statute. (Adams & Co. v. Hackett et al. 7 Cal. 187; Johnson v. Reynolds, Jan. T. 1857.)

In Louisiana they have a similar law. (Louis. Code of Practice, 272, Secs. 642—647.)

The interest of a party in a note may be sold on execution without the Sheriff taking possession of it. (Brown v. Anderson, 4 Martin N. S. 426.)

The seizure of the choses in action is not required, as they are not tangible, the note being the mere evidence of the debt, and not the debt itself. (Wilson v. Munday, 5 Louis. 486.)

An execution may be levied on a sum of money directed by the Legislature to be paid to the defendant. (2 Martin N. S. 180.)

II.   Defendant objects that the levy was not properly made ; that the Sheriff should have taken possession of the note, and that the note is not sufficiently described, etc.

The foregoing authorities in the Louisiana Reports are sufficient to show that it is not necessary for the Sheriff to take actual possession of the piece of paper which is the mere evidence of the debt.   Section 217 of the Practice Act speaks definitely of "debts and credits" as property not capable of manual delivery, and Section 228 provides that the certificate of sale shall be sufficient to transfer the title in such cases without any manual delivery.

As to the description required, it is sufficient if it will enable one to identify the property intended, even though in some particulars it may be false or inconsistent. (Wing v. Burgess, 1 Shepley, 111 ; 29 Maine, 62 ; 6 Green. 162; 3 N. H. 535; 19 Vt. 334 ; Stamford Bank v. Ferris, 17 Conn. 259.)

As against the judgment defendant, no great strictness or form is necessary in making a levy upon personal property; the mere entering of the property upon the execution will conclude the defendant, though the property is not present and the officer does not know where it is, though such a levy would not be good against third persons. (Crocker on Sheriffs, Sections 427—429 ; 9 Barb. S. C. 620—629.)

The failure of the officer to comply with the law respecting levies and sales on execution will not vitiate the sale, but the remedy of the party injured is by action against the officer. (Smith *v.* Randall, 6 Cal. 47.)

III.   Alleged fraud in the sale.

We object that the sale cannot be attacked in this collateral action, but can only be done by a direct motion, in the action in which the sale was made, to set it aside.

But even if it can be done in this collateral way, still defendant's answer does not show sufficient to authorize a Court of Equity to set aside the sale and cancel plaintiff's certificate of sale.   If he claims that the property was sold for an inadequate price, he must first do equity before he can claim equity, by tendering to plaintiff the amount that is justly due him, or at least, the amount of the purchase money ; and this he has not done or offered to do.

In 4 J. C. R. 118, cited by defendant, the sale was set aside upon proof of actual fraud, but only upon payment of the whole debt due on the judgment, all incumbrances paid by the purchaser, and all improvements made on the property by him.   (6 J. C. R. 205.)   This Court has held, after a thorough and most able examination of the authorities, that mere inadequacy. of price is never of itself sufficient to annul a sale on execution, but there must be circumstances showing fraud in the officer making the sale.   (Smith *v.* Randall, 6 Cal. 47.)

The case of Argenti *v.* San Francisco, was one of actual fraud, and was a peculiar case in itself, and does not conflict with Smith *v.* Randall.

*Tuttle & Hillyer*, for Respondent.

The Court properly dismissed the bill.   The complaint does not state facts sufficient to constitute a cause of action.   Under the common law, a chose in action could not be sold on execution.   (9 Johns. 96 ; 4 Id. 41 ; 17 Id. 351 ; Allen on Sheriffs, 161 ; 17 Mass. 263.)

The contract or debt which the Sheriff professed to sell was not for the payment of money absolutely.   Blen's demand is for unliquidated damages, for failure to comply with the contract. These damages cannot be ascertained except by a verdict.

They are a question of fact, and their amount rests on proof. No one, can, therefore, say what was sold. As well might an officer sell a demand of A against a stage company, or steamboat company, for failure to comply with a contract of affreightment or passage.

The return of the Sheriff shows that he made no levy. He did not have possession of the contract, and only levied on the indebtedness, as mentioned in the contract, without describing what was mentioned. To constitute a levy, goods must be in the immediate view of the Sheriff. (19 Wend. 495; 2 Hill, 666; 9 Barb. 619; 16 Id. 585.)

The property must be present and in the view of those attending the sale. (4 Barbour, 484, 485; 14 John. 352.) Our statute provides a way in which the Sheriff may have a chose in action in view of those attending the sale. He must return an inventory of the property attached, and if the person owing the debt refuse to give a memorandum he may be taken before a Judge and compelled to return it. The debtor may, also, in the same way be compelled to deliver up any notes or evidences of the debt.

The Sheriff, when he did not receive bids anything proportioned to the value of the property, should have adjourned the sale. (Crocker, Sheriff, p. 201, paragraph 474; 5 Sewell, 253.)

A chose in action cannot be assigned without an assignment of the writing; if so, can a Sheriff sell without possession of the contract? (Palmer *v.* Merrill, 6 Cushing, 282; Howe *v.* Glenkworth, 17 Mass. 243.)

A demand for fourteen thousand dollars is sold for one hundred. It is bought by a man, too, out of whose property a large proportion of it must be collected, if collected at all. Inadequacy of price alone is sufficient to authorize a Court to set aside a sale. (See 12 Wend. 253; 6 Wend. 522; 18 Wend. 611; 1 Story's Eq. Sec. 185, Notes 6, 7; Neilson *v.* McDonald, 6 John. Ch. R. 205; Howell *v.* Baker, 4 Ib. 118.)

BALDWIN, J. delivered the opinion of the Court — FIELD, J. concurring.

The main question in this case is, can a chose in action, like that in evidence, be sold by the Sheriff under execution, by

virtue of a general levy, so that the title of it passes to the vendee. Plaintiff had judgment and execution against Blen for some seven hundred and fifty dollars, and issued execution thereon, which the Sheriff returns, levied as follows:

"I hereby certify that I received this annexed execution March 23d, 1858, and by virtue of its commands, I, on said day, levied upon all right, title, interest, and claim, of Joshua Blen, of, in, and to, a certain contract or agreement executed by the Bear River and Auburn Water and Mining Company, by James Neall, President, to the said Joshua Blen, dated the fourteenth day of February, 1856, for the payment of the sum of fourteen thousand five hundred dollars, in the manner specified therein, and also, indebtedness and liability of the said Bear River and Auburn Water and Mining Company to the said Blen, under said contract, or in any other way by delivering personally to H. W. Brouse, Esq. Managing Agent of said Bear River and Auburn Water and Mining Company, at the office of said company, in the town of Auburn, county and State aforesaid, a copy of this annexed execution, with notice upon said execution of my levy upon said interest, right, title, and claim, of said Joshua Blen, of, in, and to, said contract, and also upon all indebtedness and liability of the company to said Joshua Blen, under said contract, or in any other way.

And, after giving public and lawful notice for seven days, by posting notice of sale in three public places in the town of Auburn, in said county and State, I, on the 29th day of March, A. D. 1858, sold at public auction, in front of the Court-House, in said town of Auburn, county and State aforesaid, said right, title, interest, and claim, or any indebtedness or liability under the mentioned contract, or in any other way, of Joshua Blen from the Bear River and Auburn Water and Mining Company to J. R. Crandall, for the sum of one hundred dollars, cash in hand to me paid, it being the highest and best bid made for said property. And I also, on said 29th day of March, A. D. 1858, made out and gave to said J. R. Crandall a certificate of sale of said property. And on this 30th day of March, A. D. 1858, I have applied the one hundred dollars as a credit on this annexed execution, for the part satisfaction of the same. March 30th, 1858.

CHARLES KING, Sheriff.

By L. BULLOCK, Under Sheriff."

Crandall *v.* Blen.

The agreement claimed to have been made is in these words:

"The Bear River and Auburn Water and Mining Company, for and in consideration of the ditch, known as the Tracy Ravine and Mississippi Bar Ditch, by them this day purchased of Joshua Blen, and in consideration of the interest claimed and held by the said Blen in the Beals' Bar Ditch, which interest in said last named ditch the said Blen has this day assigned to said company as value received, promise to pay to said Blen fourteen thousand five hundred dollars, as follows: Two thousand five hundred dollars in cash, and twelve thousand dollars in the manner following, to wit: First, the expenses of keeping said ditches in good working order, and the expenses of employing agents to attend to said ditches, are paid out of the proceeds of the sale of the water from said ditches; the revenues and profits arising from the sales of water from said ditches, over and above said charges, are to be applied to the liquidation of said sum of twelve thousand dollars, until the whole sum is paid; and to hasten and make certain the timely and early payment of said sum as aforesaid, said company promise to furnish from their ditch, to be used in the above named ditches, so much water, which, added to the water supplied to said ditches from their other sources, shall be sufficient to effect sales to the amount of one thousand dollars per month; and when said company shall fail to furnish water as aforesaid, the said company hereby obligate themselves to pay to said Blen interest at the rate of ten per cent. per annum on the said monthly deficiency until met by receipts by sales over and above the one thousand per month.

Given this 10th day of February, 1856.

JAMES NEALL,
President, B. R. & A. W. & M. Co.

Test, C. W. LANGDON."

There were some two or three persons at the sale, and the agreement was struck off for one hundred dollars to plaintiff. The agreement was not present at the sale, nor fully explained to the bystanders. The plaintiff was a stockholder of the Bear River Company, against which company a suit was pending by Blen at the time of the sale, and the question of liability of the company on this agreement was in controversy.

The contract was not read to the few persons present at the Sheriff's sale, nor was any more particular description made than that given in the levy. Section 124 of the Practice Act provides that all debts due the defendant and all other property may be attached. Section 217—debts and credits and other property not capable of manual delivery, may be levied upon by execution. Section 220, directs the Sheriff to collect or sell the things in action. Section 227—the purchaser of personal property capable of manual delivery, shall receive the possession, and also a certificate of sale if he desires it. Section 228, provides that the Sheriff shall execute and deliver to the purchaser of personal property not subject to manual delivery a certificate of sale and payment.

It is contended by the Appellant that choses in action are subject to levy and sale as other property, and certainly some countenance seems to be given to this idea as well by the provisions of the statute as the cases of Adams & Co. *v.* Hackett & Co. (7 Cal. 187,) and Johnson *v.* Reynolds. No statute could be more impolitic or more unnecessary, if this be its true interpretation ; for the exercise of the right must necessarily lead to the most enormous sacrifices and the grossest frauds; and effectual modes are already provided by which these rights of property can be reached by the creditor, and for their full value, as well as by a levy and sale of them. It is contended that this levy may be made, not upon the chose in action, that is, upon the written contract note, etc. but upon the debt—that is, upon a mere guess of indebtedness, and that this levy at once changes the property from the debtor to the Sheriff, and, by the sale, from the Sheriff to the purchaser. Of course, the Sheriff sells in every such case, neither knowing himself, nor could the purchaser know, where the note was—whether assigned or not—whether there were any defenses or not—or, probably, where the title of the note was, or what its value. The purchase would, in such instances, be a mere gambling speculation, in which one man would probably be ruined if the chose was for a large amount, for the benefit of some speculator having secret information as to the facts. It is contended, further, that this applies not only to liquidated claims, but to unliquidated—to every sort of chose in action—we presume to executory contracts—to contingent contracts—to ev-

Crandall *v.* Blen.

ery sort of contract whereby one man is or may become indebted to another; that a covenant of warranty may be thus sold and assigned, bonds of indemnity, open accounts, partnership balances, and in fine, every sort of remote or contingent interest, in suit, or however complicated. According to this theory, a chancery suit may be sold out, or, perhaps, even a claim for damages in slander or assault and battery. Before we give our sanction to so sweeping and destructive a construction of the statute, we must be very thoroughly convinced the terms of it require this interpretation. The common law recognized no such notions, and this statute, so far derogating from it, is to receive a strict construction.

If we concede that a chose in action is the subject of levy, are we authorized to hold that the chose itself need not be levied on? To decide that there may be a mere ideal levy? There need be nothing tangible and physical, or a reduction to actual possession and dominion of the thing itself which is the subject of the levy? If this were so as to notes, judgments, etc. can we hold that contingent and complicated contracts are embraced by the act, and not only a chose in action, calling for a definite sum without any condition?

But, not passing on these points, we hold when the paper evidencing the debt is not present to be assigned to the purchaser, and exhibited to the bystanders, that at the very least, a full and accurate description of the particular interest and chose in action, with all of its conditions and covenants, and a full explanation of the facts which determine the value of such instrument or contract, must be given by the levy and announced at the sale. If a Sheriff could sell a piece of property—as a horse running loose in the woods—we suppose no one would doubt that he must so describe it as to give some idea of its character, qualities, and value; and the reason is not less for requiring such a description in a case like this—the whole value and motive to purchase depending upon this description and these facts—and, certainly, if a bill were filed to enforce such a purchase as the one just supposed, the defendant might set up, if a horse worth a thousand dollars were sold by the Sheriff, in the presence of three persons, for a dollar—that the sale should not be enforced. It is of the essence of every public sale that there be a descrip-

tion sufficient to apprise the bystanders, with reasonable accuracy, of what is sold or offered. It will be seen by reference to the levy and agreement before fully set out, that the Sheriff did not pursue this course; and, therefore, no title whatever passed by this sale.

Judgment affirmed.