John O'Mahoney *v.* August Belmont et al., Respondents.

While a receiver may be appointed by the court, upon its own motion, in a case requiring it, a proceeding for such an appointment cannot be inaugurated or conducted by a stranger having no connection with or interest in the subject-matter of the litigation.

Where a stranger procures himself to be appointed receiver, and obtains control of a fund in controversy without the consent and contrary to the wishes of the parties, he is an intruder and trespasser, and will be held to strict responsibility.

An order appointing a receiver should describe with sufficient particularity the property he is to take, otherwise he cannot hold.

Where property is in the possession of a receiver appointed in an action pending in one court, it is under the jurisdiction of that court, which alone can determine all claims to it and direct as to its disposition, and an order of another court appointing a receiver of the same property is subject to this right.

A subsequent receiver only takes what is undisposed of by the court in the litigation in which the prior receiver was appointed.

After a receiver has been once appointed, and has taken rightful possession, the proper course for parties in another action claiming an interest in the property, is to make application to the court making the appointment. An interference with or obtaining possession of the property without the permission of such court is a contempt.

In an action to recover moneys alleged to have been paid by plaintiff to defendants for the purchase-price of certain bills of exchange, which

were lost, an application was made by plaintiff for the appointment of a receiver; the hearing was postponed; before the time, as extended by stipulations, for a further hearing had arrived an order was granted at the instigation of one B., without the knowledge or assent of the parties, appointing him receiver of the moneys "deposited for said bills of exchange," and directing defendants to pay over the amount to such receiver.    Upon motion of the attorney of the receiver to punish defendant L. for contempt in disobeying said order, and notwithstanding the opposition, stipulation and protest of the attorney for the parties, an order was granted directing L. to pay over the moneys, or, in default, that he be committed to jail, whereupon L. paid over the amount to B. These orders were subsequently reversed on appeal, and the complaint in the action dismissed.    *Held,* that B. was properly required to account for and to pay over to L. the whole sum received, with interest, without any allowance for his own or his attorney's fees or expenses ; that the fact that the moneys received by B. were deposited by him in a bank, which subsequently failed, was no answer, as he had unlawfully possessed himself of the fund; and that B. was properly charged with the referee's fees upon his accounting.

· Also, *held,* that it was no objection to an accounting that the order appointing B. was void ; that he could not avail himself of the invalidity of an appointment procured by him, and under which he had acted, to escape liability.

An order was granted requiring B., as receiver, to pay out of the fund to plaintiff's attorney $2,500; this sum B. paid upon the day the order was entered, with knowledge that an appeal would be taken.    The order was reversed on appeal.    *Held,* that B. was not entitled to be allowed the sum so paid, as the fund was subjected to the operation of the order by his wrongful act in obtaining possession of it; at least, that he should either have applied to the court for instructions, or have awaited further action before paying.

B. claimed a right to retain possession of the money under an order appointing him receiver, granted subsequent to his appointment herein, in an action in another court, wherein the parties to this action were defendants ; the order restrained defendants from paying over, taking or disposing of moneys, now or lately on deposit with the defendants to the credit of the plaintiff herein, and appointed B. receiver of "said fund so deposited or lately on deposit."    *Held,* that the description did not embrace the fund in controversy here, as it was not received on deposit ; also, that the fund was under the control of the court in this action, and it having determined defendants' rights to it, and having directed its restoration, there remained nothing in the hands of the receiver which could be affected by the subsequent appointment.

(Argued April 27, 1875; decided May 25, 1875.)

APPEALS by Thomas J. Barr, receiver, etc., from orders of the General Term of the Superior Court of the city and county of New York; the one affirming an order of Special Term settling the accounts of said Barr as receiver, and the other directing him to pay over to defendant Lucke the amount found in his hands upon such settlement.

The complaint in this action alleged that the plaintiff had deposited $19,592.44 in gold, with the defendants; that the defendants, at his request, drew and delivered to him certain bills of exchange, on London, payable to the order of John O'Leary; that such bills were delivered in consideration of the said moneys paid to the defendants by the plaintiff, and that he was the real owner thereof; that he endeavored to transmit by mail such bills to said O'Leary, who was in the matter only his agent, but had no interest in the bills or their consideration; that the said bills, a part of each set, were abstracted from the mail and lost, and never went into the possession of said O'Leary; that the bills had never been presented for payment and still remained unpaid; that the defendants were duly notified of such abstraction and loss, and the plaintiff countermanded and stopped payment of them; that the defendants had withdrawn the funds or money placed to the credit of the bills in London, and then held the same; that the plaintiff had demanded of the defendants the return of the money so paid for the bills; that the plaintiff, at the request of the defendants, and according to the statute in such case made, had executed a bond in double the amount of the bills to indemnify the "obligee" above named, and also the drawers of the bills, against damage to arise from the bills; that the plaintiff tendered said bond, with sufficient sureties, to the defendants, who refused to receive the same and to pay the plaintiff the sums of money represented by said bills, or any part thereof, and that the defendants "unlawfully withheld the said sum of money represented by said several bills of exchange, and have wholly failed to pay the same or any part thereof, to the great damage of the plaintiff," etc. The complaint, for a further cause of action,

alleged that the defendants were indebted to the plaintiff in a certain sum of money for so much money had and received by them to his use, of which payment, though demanded, had been refused. As relief the complaint asked, among other things, that the said sum in gold be paid and deposited by defendants in court; that an order be made appointing a receiver to take charge of and receive the gold or money aforesaid.

This complaint was verified June 30th, 1869. Upon the same day an order was made to show cause, on 2d July, 1869, why a receiver should not be appointed " to take charge of and receive the gold or moneys deposited by the plaintiff with the defendants, in consideration of the bills of exchange mentioned, such bills alleged to be lost or destroyed, with full power to discharge the defendants from the sum and the payment thereof upon the defendants' paying into this court as such receiver the amount of gold so deposited by them, or its equivalent in the currency of the United States."

This order to show cause was based upon the complaint and an affidavit of the plaintiff's attorney. The complaint and order to show cause were served upon the defendant Lucke only. The order proceeded to argument, the defendant Lucke using on his part an affidavit made by himself. On the argument the plaintiff's counsel asked leave of the court to put in rebutting affidavits, to be served upon the defendants' attorneys, who had leave given them to put in further affidavits in answer to the rebutting affidavits of the plaintiff. The court assented to this, and the time within which the affidavits were to be handed to the court was specified. The plaintiff could not obtain the affidavit he wished in the time given him, and procured from the defendants' attorneys further time for that purpose. The defendants' time to furnish further affidavits on their part was not to expire until 21st or 22d July, 1869. During the suspension of the motion, negotiations for a settlement of the action began, and were continued, at least down to twenty-first July. Several days before the seventeenth July, the plaintiff's counsel had

seen Mr. Barr and told him "we did not want a receiver, but were going to give a bond of indemnity." This bond was prepared before the sixteenth. On July sixteenth, a Mr. Henderson wrote a note to Mr. Talmadge, the plaintiff's counsel, that he wanted to see him about the order in this action, and asking if he could come down to his office forthwith. Mr. Talmadge went as requested to the office, and was then for the first time informed by Mr. Henderson that the judge had appointed Mr. Barr as receiver in the cause, and that he was his counsel. He then presented Mr. Talmadge with the form of an order, and asked him to consent to the entry of it. Mr. Talmadge told him that arrangements were perfected for the settlement, and further told him not to enter the order. Mr. Henderson promised not to enter the order until Monday, July nineteenth. Mr. Talmadge further informed Mr. Henderson that the case had not been submitted, and directed him to the defendants' attorneys. Mr. Talmadge, on seeing the plaintiff and his attorney, explained the matter to them, and they approved his course; according to Mr. Talmadge's testimony they did not want a receiver, and were going to give a bond of indemnity, and get the money that way. Upon the next day, July seventeenth, the order for the appointment of receiver and naming the receiver was entered, by whom it does not appear. Mr. Talmadge, ignorant that the order was entered, went on the seventeenth, to the office of the defendants' attorneys, in furtherance of a settlement. While talking with one of them, he learned that Mr. Barr and his counsel, Mr. Henderson, were at the office of the defendants for the money. Mr. Talmadge went to this office, and there saw them, and also the defendant Lucke, who had been served with the order. Mr. Talmadge directed such defendant not to pay the money, and told the receiver and his attorney not to receive it. He further told them that he had not applied for a receiver, and did not want one. The receiver made a demand of the money from said defendant; he declined to pay. On the same day the receiver made an affidavit of this demand, and obtained an order that the

defendants show cause why both of them should not be punished for contempt. On the twenty-seventh of June, plaintiff's attorney signed a stipulation reciting that the order appointing a receiver had been entered by mistake, and contrary to stipulations and stipulating that it be set aside. On the twentieth July, on the return of the order to show cause, an order was made on application of the receiver's counsel, against the earnest protest of the counsel for the parties, that the defendant Lucke be committed to jail until the money referred to be paid to the receiver; and that a warrant issue to carry the order into effect. But the order provided that the defendant be purged of contempt if he should pay the money, viz., $16,786.70 in gold, to the receiver, and the receiver was directed to pay $2,500 in currency out of such fund, when paid, as counsel fees and disbursements to the attorneys and counsel of the defendant. The defendant paid over to the receiver the money, under this order, and the receiver paid the $2,500 to the defendants' counsel and attorneys. On the 20th of July, 1869, an order was granted on motion of the plaintiff's attorney, directing the receiver to pay to him, for counsel fee and disbursements in the action, $2,500. This motion does not appear to have been based upon any affidavits whatever, and was opposed by the defendants. The order was not entered until July twenty-ninth, and after the receiver had been, on his own motion, made a defendant in the action. This money was paid on the day last mentioned, to plaintiff's attorney, by the receiver. On the twenty-first of July, on application of the receiver, an order was made that he be made a party, and that all papers be served upon him or his attorney. The defendant Lucke appealed from all the orders that have been specified, and they were all reversed. The complaint in the action was also dismissed. An order, upon notice, was subsequently made appointing a referee to take and state the accounts of the receiver; directing, also, that the receiver attend before such referee to pass his accounts, and that the referee report his conclusions to the court, all other questions to be reserved until the coming in of said report and motion for its confir-

mation.   The referee proceeded under this order, and reported that the receiver received $16,738.70 in gold, worth $22,597.24 in currency, and charged him with that sum, and interest at four per cent, that being the rate allowed by the bank in which said fund was deposited by said receiver.   He allowed him for the $5,000 paid to the attorneys of the parties, and for attorney and counsel fees, commissions and disbursements, $1,849.86; finding a balance in the receiver's hands of $17,523.55.   Defendant Lucke excepted to so much of the report as charged the receiver with interest only at the rate of four per cent, and to so much thereof as allowed him for disbursements, commissions, fees, etc.   The Special Term sustained the exceptions, and charged the receiver with the sum of $22,597.24, the amount realized by him in currency for the gold received by him, with lawful interest, crediting him only with the $2,500 paid defendants' attorneys, and charging him, also, with the referee's fees.

Upon the motion to require Mr. Barr to pay over the amount so settled, he presented, in opposition, an order granted in an action in the Supreme Court, wherein Thomas N. Dwyer was plaintiff, and the plaintiff and defendants in this action were defendants, dated June 1st, 1870, by which order defendants and their attorneys were restrained "from paying over, taking, disposing of or in any way parting with the money now in the control of, or now or lately on deposit to the credit of said O'Mahoney, in the hands of August Belmont and Ernest B. Lucke," and by which Mr. Barr was appointed receiver " of the said fund, so deposited or lately on deposit."   This order was made without notice to the defendants herein.   Mr. Barr also produced an order, in an action in the New York Common Pleas, wherein Mr. Talmadge was plaintiff and the parties herein, Mr. Barr and Mr. Dwyer, were defendants, restraining Mr. Barr from paying over the moneys and funds in his possession to either of the other defendants.   A paper, however, was produced, signed by Mr. Talmadge, entitled in said cause, consenting that the stay or order be waived so far as to permit Mr. Barr to pay and

restore the moneys in his hands as receiver to the defend-
ant Lucke, subject to the order of the Superior Court.
The affidavit of Barr was also presented, deposing, among
other things, that he deposited the moneys received by him
in the Bowling Green Savings Bank, to his credit as receiver,
at the rate of four per cent; that the bank, at the time of
such deposit, was solvent, but has since failed and is in the
hands of a receiver, who has since declared a dividend of
twenty-five per cent upon the deposits, and no more; that
deponent also had a large amount of his own funds on
deposit; that he had no knowledge or reason to suspect that
the bank was in an embarrassed condition, or about to fail,
until after the failure.

The order granted directed Mr. Barr forthwith to pay over
to defendant Lucke, or his attorneys, the balance with which
he was charged by the order of settlement, with interest.

Further facts appear in the opinion.

*S. Jones* for the appellant.  The receiver was not charge-
able with interest unless he had made a profit out of the
trust fund, or had mingled it with his own and used it; and
was then only chargeable with simple interest. (*Utica Ins.
Co.* v. *Lynch*, 11 Paige, 520.)  The attorneys for the parties
having received a benefit under the order of receivership, and
the order adjudging Lucke guilty of contempt, neither they
nor the parties can claim that either of these orders were
irregular or improperly granted. (*Taussig* v. *Hart*, 33 N.
Y. S. C. R., 157.)  It was not necessary for the receiver, before
commencing an action, to apply to the plaintiff's attorney to
do so and for the latter to refuse. (*Noe* v. *Tibbons*, 7 Paige,
513; *Parker* v. *Browning*, 8 id., 390; *Iddings* v. *Bruen*, 4
Sandf. Ch., 417.)  A receiver represents the interests of all
parties in the property; and it is his duty to protect it, to the
best of his ability, for all parties, without being controlled by
the representations of any one of them. (*Iddings* v. *Bruen*,
4 Sandf. Ch., 417; *Green* v. *Bostwick*, 1 id., 186; *Ryckman*
v. *Perkins*, 5 Paige, 545; *In re Ainsley*, 1 Edw. Ch , 576.)

It was not necessary for the receiver to obtain leave from the court before commencing an action. (*Merritt* v. *Lyon*, 16 Wend., 410; *Swaby* v. *Dickson*, 5 Sim., 629.) A subsequently appointed receiver, after a prior receiver becomes *functus officio*, takes from the prior one the fund or any remaining portion of it. (*Bailey* v. *O'Mahoney*, 33 N. Y. S. C. R., 241.) A receiver cannot be appointed over the possession of another receiver; the proper motion is, that the receiver already appointed be extended to the cause in which it is sought to appoint one. (Edw. on Recrs. [2d ed.], 12, 61; *Osborne* v. *Heyer*, 2 Paige, 342; *Howell* v. *Ripley*, 10 id., 43; Ch. Rules, 1834, Rule 193; *Cagger* v. *Howard*, 1 Barb. Ch., 368; Code, 1848, § 243; Code, as amended 1851, § 298.)

*W. W. MacFarland* for the respondents. Barr having obtained the money by fraud, compulsion and duress, it could be recovered on general principles in an action of assumpsit. (Broom's Leg. Max., 270, 275; Kerr ón Fraud and Mistake, 293, 294; 1 Str., 557; 18 Q. B., 190; *Hooper* v. *Lane*, 6 H. L. Cas., 443; *Green* v. *Elgie*, 5 Q. B., 99; Gr. Ev., § 111.) No property will be embraced in an order appointing a receiver by intendment or construction. (*Crow* v. *Wood*, 13 Beav., 270.) The rights of the parties to the money could only be determined by the Superior Court. (*Peale* v. *Phipps*, 14 How. [U. S.], 374; *Mil., etc., R. R. Co.* v. *Mil., etc., R. R. Co.*, 20 Wis., 165.) Any person attempting to disturb the possession of Barr, as receiver of the Superior Court, would be guilty of a contempt. (*Angell* v. *Smith*, 9 Ves., 335; *Hutchinson* v. *Massarene*, 2 Ba. & B., 55; *Aston* v. *Heron*, 2 M. & K., 391; *Ames* v. *Birkenhead Dock*, 20 Beav., 353; *Lan* v. *Sterne*, 3 Giff., 629; *Evelyn* v. *Lewis*, 3 Hare, 475; *Russell* v. *Ela Aug. R. Co.*, 3 Mac. & G., 115, 123; *De Winton* v. *Mayor, etc.*, 2 Beav., 200, 203.) The only remedy of a party claiming any interest in property in possession of the court, is to apply to the court for any relief he desires. (*Evelyn* v. *Lewis*, 3 Hare, 472; *Bryan* v. *Cor-*

*mick*, 1 Cox, 422; *Langton* v. *Langton*, 7 D., M. & G., 30; *Sutton* v. *Rees*, 9 Jur. [N. S.], 456; *Everett* v. *Neff*, 28 May, 187; *Noe* v. *Gibson*, 7 Paige, 513.)

Opinion on appeal from order, affirming order sustaining the defendants' exceptions to the referee's report on passing account of receiver.

MILLER, J. The appointment of the receiver in this action, and the subsequent proceedings had in regard to the same, was an invasion of the rights of the parties, calculated to waste and deplete the alleged fund, and not demanded by the nature of the action or the circumstances of the case. The reasons for such a conclusion are entirely apparent. The action was in reality for money had and received by the defendants, and if any liability existed, it arose from the purchase of bills of exchange of the defendants which had been delivered, and it is claimed were lost. It was not a legal claim for any specific property or fund which belonged to the plaintiff, but in reality an ordinary action to recover money. There is no principle which sanctions the appointment of a receiver in such a case, and it is entirely without a precedent to uphold it.

If it might in any sense be considered as a case coming within the law applicable to a receivership, then the money was entirely safe in the hands of the defendants. No question is made as to their pecuniary responsibility, nor did it appear in any way that the money was in jeopardy or liable to be lost while in their possession. Without some fact to establish that the alleged fund was in danger, there is no principle of law or any established practice which authorizes a party to invoke the aid of a court to apply this provisional remedy (see § 244, Code), and thus to transfer money from one person, with whom it is entirely safe, to a receiver.

Where such a right exists it is usually called in exercise upon the application of one or more of the parties in interest. While the court may upon its own motion nominate a receiver

where the case requires it, such a proceeding cannot according to the regular practice be inaugurated and conducted by outside parties, who have no connection with the case, or interest in the subject-matter of the litigation. A person not having any interest cannot propose a receiver, and it is contrary to the orderly and regular proceedings of a court of justice to allow a stranger to participate in a motion for such an appointment. (*Attorney-General* v. *Day*, 2 Mad., 246; Edwards on Receivers, 22.) The attorney for the receiver had no interest whatever in the controversy and was an entire stranger to the suit, and the parties. Nor had the receiver any connection with the attorneys in the case. Both of these persons, the receiver and his attorney, undertook to obtain control of the money in a most unaccountable and unjustifiable manner. The attorney who was employed by the receiver appeared without any authority whatever from the parties, participated in the proceedings without any solicitation or request of either of the parties; and against their remonstrance, resistance and determined opposition, the receiver was thrust into the office. Nor was this all. A fraud was perpetrated in procuring the order. While the motion had been suspended to enable the plaintiff to serve additional affidavits, and before counter affidavits could be procured, and in violation of an express stipulation, the order was entered and the receiver appointed. Such a transaction could not stand the test of a judicial scrutiny, and this with the other proceedings of the receiver was very properly reversed upon appeal.

The counsel for the receiver insists that the counsel for the plaintiff and the attorney were in conflict with each other, as to the course to be pursued in regard to the appointment of a receiver, the attorney really urging the appointment, and the counsel opposing it. There is no sufficient evidence to warrant such a conclusion, and if it can be upheld, it must be upon the ground that the attorney was acting deceitfully and in direct opposition to his client's interest. This is not to be assumed, and is contradicted by the acts of the attorney and his letter, after the appointment was made, expressing his

regret at the occurrence as well as the seeming want of professional courtesy, and stating facts showing that the order was made in opposition to the stipulations of the parties, and that nothing should be omitted to reinstate the defendants' attorneys in the case according to the stipulations and understanding. The receiver does not swear positively, but thinks the attorney spoke to him, and asked him to go and make the demand of the defendant Lucke, and one of the counsel testifies that the attorney stated in the receiver's presence that the money must not be paid over. The attorney was not called as a witness, and it may be fairly assumed, I think, that he would have been if he could have proved the fact claimed, as it was vital to the receiver. But even if there was any ground whatever for supposing that the attorney sanctioned the proceedings, I think there was no sufficient excuse for the action of the receiver. He was himself an attorney, had counsel from the beginning, and must have known that the manner in which the proceeding was conducted was entirely unauthorized, and would not be upheld upon appeal. He knew or should have known that the question would be fully tested, and when there was no emergency which demanded it, persisted in his efforts to obtain the money from the defendant Lucke, and compelled him to pay or abide the consequences of a failure to do so, upon pain of arrest and imprisonment.

The other facts connected with the receiver's appointment, and his subsequent proceedings, are satisfactorily discussed in the opinions of the court at Special and General Term, and it is not necessary to refer to them at length. It is sufficiently apparent that the entry of the order under the circumstances, by the attorney employed by and with the concurrence of the receiver, was an abuse of the proceedings which cannot be disregarded, and for which he should be held responsible. It constituted him an intruder, and a trespasser upon the rights of the parties. As he assented to and participated in the transaction, there is no sufficient reason why he should not be held accountable for

his acts.  He had full notice that the order of appointment
was not to be entered until the defendants had an oppor-
tunity to be heard at a subsequent day, agreed upon by
the attorneys, and the conclusion is irresistible, that it was
done before the time stipulated, with his knowledge and
approval.  He also knew that the parties to the suit did not
desire that a receiver should be appointed, and in view of
this fact, against their protest and active opposition he
struggled to procure, and voluntarily consented to take the
position.  Instead of applying to those interested for counsel,
he chose to rely upon an entire stranger to the proceedings.
It would be an unusual precedent to hold that a receiver thus
appointed without the intervention of the parties, with his
own connivance, and under the peculiar circumstances dis-
closed in this case, had any special right to ask the protection
of the court, in sustaining and giving countenance to his
proceedings the same as if they were regularly and properly
conducted, and were legal and valid.  Such a practice would
lead to the most serious results, and as in the case before us
the moneys belonging to the parties might be lost, frittered
away, and misappropriated, by the payment of large fees and
legal expenses which were entirely unauthorized, to the
detriment of individuals and the fund.

Fraud vitiates all contracts, and a judgment or order thus
obtained binds neither the court nor the parties.  It avoids
even all judicial acts.  (Kerr on Fraud and Mistake, 293, 294.)
The receiver having obtained control of the moneys, when it
was entirely unnecessary to protect them, and in opposition
to the wishes of the parties in interest, and by means which can-
not be justified or excused thus subjected them to large
charges and expenses, there is no reason why he should not
be held to a strict accountability, or that he should be allowed
for any of the expenses incurred.

The charges presented on the accounting before the referee
are fully considered in the opinions before referred to, and
concurring mainly in the views expressed as to most of them,
I think do not require any remarks.  The only one which

demands any particular comment, is the sum of $2,500, alleged to have been paid to the plaintiff's attorney by an order of the court made on the twentieth of July, and entered upon the twenty-ninth of the same month. The money was paid on the day when the order was entered, as the receipt shows, and the notice of appeal from the order is dated June twenty-first, probably intended for July twenty-first, the day after the order was granted. The court reversed the order, and although there is no proof that the notice of appeal was served upon the receiver, or when it was served if served at all, it is at least a reasonable inference that the receiver had knowledge, in view of what had already transpired, that an appeal would be taken, and was at liberty to apply to the court for instructions as to his duty. (*Curtis* v. *Leavitt*, 10 How., 481; *Matter of Van Allen*, 37 Barb., 225.) He should have done so, if there was any doubt as to the proper course to pursue, and would have been justified in awaiting further action instead of paying the money on the very same day upon which the order was entered. He could have refused payment, and if an attempt was made to enforce it, he could have resisted such an attempt upon the ground that the order was appealed from, and might perhaps be reversed. This he failed to do, and thus did not take the proper measures to protect himself and the fund against such an order. It is also a sufficient answer to this claim, that the fund was subjected to the operation of the order in question by the original wrongful act of the receiver and his counsel, so far as the defendants are concerned. But for this, no order would have been made, directing payment in the preliminary stages of the suit, before the litigation was fairly under way, of a large and exorbitant amount to the plaintiff's attorney, and the money received would not have been subjected to the illegal charges of the party who was unsuccessful, and therefore not entitled to any costs or counsel fees.

There is no ground for claiming that the application of the attorney for the plaintiff, for the amount paid to him, was a ratification of the entry of the order of appointment. Even

if the order was wrong of itself, and against the attorney's wishes, I think the attorney had a right to accept the condition of the case as it actually was. The same remarks are applicable to the sum paid to the defendants' attorneys, with the qualification, however, that the money belonged to the defendants, whom they represented.

The position that the receiver cannot be called to account if the order is void, is not well taken; it is enough to say that the receiver claimed to act, and did act, as such; he was a receiver *de facto*, for the time being, and cannot avail himself of an irregular or void appointment under which he has acted, procured by his own instrumentality, and thus escape an accounting for the moneys which came into his hands. The other points which are urged by the receiver do not require especial consideration. This case presents the peculiar aspect of a party intruding himself into a position without the concurrence or assent of those who had a right to be heard and consulted, and by his own wrongful act obtaining possession of and controlling moneys belonging to others. Courts of justice cannot give countenance to such proceedings, or protect the party from its consequences. He must also be held responsible for the conduct of those who co-operated with him in producing the result.

The order of the General Term affirming the order of the Special Term was right, and must be affirmed with costs.

All concur.

Order affirmed.

Opinion on appeal from order affirming order directing receiver to pay over moneys.

MILLER, J. By the order of the court, the receiver who had rendered an account of the moneys received by him in this action was directed to pay over the same to the defendant Lucke, from whom they were received, and also to pay the referee's fees upon the accounting. As the action has been dismissed, and the plaintiff has failed to maintain it, there would, under ordinary circumstances, appear to be no

question as to the propriety of refunding the money to the party from whom it was received. The right, however, of the receiver to retain possession of the money is sought to be maintained on several grounds, and it is insisted that he should not be compelled to pay it over because he holds it as receiver in the case of *Dwyer* v. *O'Mahoney, Belmont and Lucke*, being appointed such receiver in the last named action subsequent to his appointment as receiver in the case at bar. The action last mentioned was commenced in the Supreme Court for the purpose, among other things, of obtaining control of moneys which it was alleged the defendant O'Mahoney had in the hands of Belmont & Co., or within their control and that of the said O'Mahoney. The injunction order provided for the appointment of a receiver of money deposited, or lately on deposit, in the hands of the defendants Belmont and Lucke, to the credit of the defendant John O'Mahoney. It is quite apparent that the description of the money does not embrace the funds in controversy. None of the money was then on deposit, nor had Belmont and Lucke ever received any money whatever on deposit from O'Mahoney. Belmont had received money in payment of bills of exchange, which were delivered to O'Mahoney's agent, and the money paid by Lucke to the receiver was the money of Belmont & Co., and did not belong to O'Mahoney. It was forced from Lucke under the pressure of imprisonment for an alleged contempt, by virtue of an order which was reversed, and which the circumstances show never should have been granted. Nor did it become the money of O'Mahoney because it was thus paid, or in any way liable to the control of a receiver in another action. The court has so decided, and held that the money was the money of Belmont & Co., and came from their funds. It is quite clear that the order in question did not sufficiently describe the fund, or show that it was the fund held by the receiver in this case. The rule is well settled that the order should describe with sufficient particularity the property which the receiver is to take, and unless this is done he cannot hold it. (*Crow* v. *Wood*, 13 Beav., 270.) The

decision of the court and the want of a proper description of the money claimed should be conclusive upon the question, and preclude the receiver from asserting any claim.

There is another answer, however, to the objection urged and that is, that the funds were in the possession of a receiver appointed in an action pending in the Superior Court, and it was under the jurisdiction of that court, and by it alone could all claims to it be determined. (*Peale* v. *Phipps*, 14 How. [U. S.], 374; *Milwaukee R. R. Co.* v. 20 Wis., 165.) The order of another court appointing a receiver was then subject to the right of the court in this action, to make such disposition of the fund as they might deem proper, and when that was done there remained no fund under the control of the receiver in the action of Dwyer. The court had an undoubted right to restore it to the parties to whom it belonged, and having done so, it is effectually disposed of.

The claim of the defendants' counsel, that a subsequently appointed receiver after a prior receiver becomes *functus officio*, and takes from said prior one the fund, or any remaining portion of it, and the authority cited to support it (*Bailey* v. *O'Mahoney*, 10 Abb. [N. S.], 270), must be considered with the limitation that the subsequent receiver only takes what is undisposed of by the court in the litigation, which in this case could be no part of it, as, by the judgment of the court, the moneys belonged to the defendants. The proper course for parties in any other action, after a receiver is once appointed and has taken rightful possession, is to make an application to the court, and it is a contempt for a third person to interfere, or even by a suit or other proceeding at law to obtain possession, without the permission of the court by whom the receiver was appointed. (*Noe* v. *Gibson*, 7 Paige, 513.) Even if the powers of a receiver may be extended in one case to another, there is no reason why the receiver last appointed should be vested with any authority over the fund, after it has been disposed of by the determination of the previous action. If the Supreme Court

had the right to appoint a receiver over the fund in controversy, it by no means follows that the order which was made without notice to the defendants is binding upon them. They would have a right to be heard upon that question, and without such an opportunity I am at a loss to see how their rights could be judicially determined.

In the case of *Talmadge v. Belmont and others*, which was commenced in the New York Common Pleas, the order, under which the receiver also claims to hold the money, restrained the defendants from receiving the moneys and funds in the receiver's possession, and the receiver from paying them to the defendants. This order is liable to some of the objections already stated in the case of Dwyer, and for that reason was inoperative in preventing the court from controlling the funds. But were it otherwise, the consent of the plaintiff in writing, that the stay or order be waived so that the receiver may restore to the defendant Lucke the moneys in his hands, and subject to the order of the court, is a full answer to any claim of the receiver by virtue of this action. The objection that the waiver is not sufficient, because it is subject to a condition which the respondent has not accepted, appears to be without any foundation.

It is further urged that the receiver should only be required to pay such sums as he has received from the Bowling Green Savings Bank, with whom the money was deposited. The receiver swears that the bank at the time was solvent, and he had then, and continued to have at the time of its failure, a large amount of his own money deposited in it, and that he had no intimation, suspicion or reason to suspect that the bank at the time was in an embarrassed condition. There is no other evidence that the institution was a safe or proper one for such a deposit, or in good credit or standing. It is exceedingly questionable whether the evidence referred to is sufficient to exonerate the receiver from liability, without some proof of the standing of the bank in question. This class of moneyed institutions are not ordinarily designated by the courts as depositaries for

trust funds under their control. It was not certainly one of the institutions where trust funds were usually deposited for safe keeping, and it would appear, from the absence of evidence to that effect, that it was not recognized generally as a suitable and secure place for such a deposit. But without deciding the question, this court has held that the receiver thrust himself into the position he holds wrongfully, against the wishes of the attorneys of both parties, and where the defendants were entirely responsible, and any amount which might have been recovered would have been paid. (See opinion on appeal from order affirming order of General Term sustaining exceptions to referee's report on receiver's accounts.)

Under such circumstances the receiver does not commend himself to the protection which the court extends to officers of this character, when lawfully and properly appointed. He made himself the custodian of the fund when it was useless, pressing his claims with great vigor, and I think he must abide the consequences of the position which he has thus voluntarily assumed.

The order of the General Term was right, and should be affirmed with costs.

All concur.

Order affirmed.