HENRY C. HOLMES v. JAMES II. McDOWELL AND SARAH R. McDOWELL.

JAMES TALCOTT v. HENRY C. HOLMES AND JAMES II. McDOWELL.

ROBERT H. ROUNTREE v. THE SAME.

ALBERT BEEBE v. THE SAME.

*Action to dissolve an insolvent partnership — appointment of a receiver therein — Insufficient bond — Rights of subsequent judgment creditors to preference.*

Where in an action brought to wind up a partnership, and divide its property among its creditors, an order is entered, by stipulation, appointing a receiver and requiring a bond to be given with one surety only, instead of with two as required by section 715 of the Code of Civil Procedure, such order is not void; but the court may, at a Special Term, by virtue of its general equity powers, amend it so as to require a bond with two sureties to be given.

In this action, commenced by one partner against his copartner to adjust the affairs of the partnership, which was insolvent, and to distribute its assets equally among its creditors, a receiver was by stipulation appointed. After the commencement of this action and the appointment of a receiver and during the pendency of this action, other actions were brought against the firm by certain of their creditors and judgments were recovered therein, upon which supplementary proceedings were instituted, resulting in the same person being appointed receiver therein, as in the first-mentioned action.

Subsequently the plaintiffs in the creditors' actions applied to have the receiver directed to pay their debts out of the assets in his hands. *Held*, that the judgments recovered by the plaintiffs gave them no priority over the other firm creditors, and that the order was properly denied. (LEARNED, P. J., dissenting.)

APPEAL from an order made at a Special Term denying a motion to require the receiver, appointed in the above actions, to pay to the plaintiffs in actions Nos. 2, 3 and 4, the amounts of their respective judgments.

*Mr. Linn* and *Mr. Patterson*, for the appellants.

*Mr. Foster*, for the respondents.

WESTBROOK, J.:

The first of the above entitled actions was one to wind up a copartnership, of which Henry C. Holmes and James H. McDowell had been the sole members. The object of the action was to adjust the affairs of the partnership, which was insolvent, and to divide the property equally among its creditors. The suit was commenced March 20, 1878, and on the twenty-sixth day of the same month by stipulation between the attorneys, an order of this court was made making Henry C. Holmes the receiver of the partnership property without security and without compensation. On the 2d day of May, 1878, also by stipulation between the parties, an order was entered making Theodore A. Claxton receiver instead of Holmes, and requiring him to give a bond with one surety.

After the commencement of the first above entitled action, and after the appointment of Holmes as receiver, the other actions were commenced. They were brought by creditors of the firm of Holmes & McDowell, and judgments were obtained in them in due time, on which executions were duly issued and returned

unsatisfied. By proceedings supplementary to execution, Theodore A. Claxton was made receiver on the third day of May, 1878, which was one day after he had been appointed to the same position in the suit between the partners.

The plaintiffs, in actions numbers two, three and four, after the appointment of the receiver in their proceedings, moved this court for an order directing him to pay their judgments. The court, at Special Term, Mr. Justice INGALLS presiding, ordered the receiver to execute a new bond in action number one with two sureties, and upon his so doing the motion was to be denied without costs. The new bond was executed, filed and approved upon the same day the order was entered, and from this order the plaintiffs in the three actions (numbers two, three and four), appealed.

Action number one is at issue and undetermined. The firm of Holmes & McDowell is insolvent, and the other creditors of the firm have had no notice of these proceedings.

It is claimed by the appellants that the order of the Special Term was erroneous for two reasons. First, because the order appointing Claxton receiver in action number one was void, for the reason that his bond was required to be with only one surety; and second, because those creditors, who had been diligent in the prosecution of their claims to judgment and execution, were entitled to priority. Each of these points will now be considered.

It is conceded, that the Code of Civil Procedure (section 715) requires a bond given by a receiver to be one with two sureties, but it is also true that section 730 provides that the court "may, on the application of the persons who executed it, amend it accordingly; and it shall thereupon be valid from the time of its execution." It is argued however, that the vice inhered in the original order itself, and that was void because it provided for but one surety by the receiver. The error in this reasoning is, that it assumes the power exercised by the Supreme Court, in the appointment of the receiver was derived from the statute, and that, therefore, all its directions must be implicitly followed; whereas, the right of this court to appoint a receiver in actions to wind up partnerships is as old as the jurisdiction of the Court of Chancery, to the prerogatives of which the Supreme Court succeeds. Having this general power, it follows that the mode and manner of its exercise, unless declared to be

jurisdictional, is directory only. So far from making a failure to follow all its requirements fatal to the proceeding instituted, the Code, after enumerating several imperfections, which shall not, after "verdict or *decision*," invalidate the judgment by section 722, expressly enacts: "Each of the omissions, imperfections, defects and variances, specified in the last section, and *any other of like nature*, not being against the right and justice of the matter, and not altering the issue between the parties, or the trial, *must*, when necessary, be supplied, and the proceeding amended, by the court wherein the judgment is rendered, or by an appellate court." If it be said that this section refers to cases in which judgment has been rendered, and that in action number one there was none, the fact in the statement may be admitted without impairing the argument to be drawn from the provision just quoted. If this power of amendment *must*, as the mandatory language requires, be exercised after judgment, it certainly contains no limitation upon the right of the court to exercise it before. Indeed, the whole title of the Code (title 1, chap. 8), of which the section just quoted forms a part, is not an enabling statute authorizing the court to do what it was prior to its passage powerless to accomplish, but is rather a command to exercise the powers it already possessed. What the court is required to do by section 722 after judgment, it is also commanded to do, by section 723, before judgment, in these words: "And, in every stage of the action, the court *must* disregard an error or defect, in the pleadings *or other proceedings*, which does not affect the substantial rights of the adverse party." It follows, then, we think, very clearly that the original order appointing Claxton receiver in action number one was not void, and that this court at Special Term, by virtue of its general equity powers, as well as by the express provisions of the Code, had the right to amend it.

From the fact, then, that the original order appointing Claxton receiver was not void, by reason either of the terms of the order, or on account of the bond having but one surety as such order provided, it follows that the plaintiffs in actions numbers two, three and four were not entitled to be paid, because of the invalidity of the first appointment of the receiver; and if they are to succeed upon this appeal, it must be because the recovery of

their judgments and subsequent proceedings entitle them to priority of payment. That position will now be examined. It will not be denied that failing debtors can, by voluntary assignment, place the title to their property in the hands of trustees, to be converted into money for equal distribution among their creditors. Whilst such a trust was being honestly administered, no creditor by suit could obtain a preference over others; nor could the parties who made the assignment, after the acceptance of the trust by the assignee, take it from his hands without the consent of creditors, and prevent its distribution. If an insolvent partnership could, by their unaided action, thus place its assets into the hands of a trustee for equal distribution, why may it not come into a court, which has plenary power thus to distribute the estate without the consent of the partners, and ask that the order of the court should place the effects in the hands of its own officer for the same purpose? Is not the consent of the partners in open court to an order by the court, and the acceptance of the trust by the court, indicated by its order, and the appointment of its receiver, equivalent to, and as valid as the appointment of an assignee by general assignment, voluntarily made and accepted without the order of the court? Cannot parties do, with the sanction and permission of a court of competent jurisdiction, that which they might properly do without it, and is a trust which the court has accepted by the consent of parties, liable to be terminated at the will of those who asked its aid, whilst one taken by an individual, through force of a written consent from the same source, is irrevocable? If these questions must, on the authority of prior adjudications, be answered in favor of the appellants, we would still be unable, by any reasoning known to us, to demonstrate the correctness of such a response. It is true, that the cause in which the appointment of the receiver was made has not yet proceeded to judgment; but it is also true that the owners of the partnership properly have, by their voluntary act, placed it in the hands of this court for equal distribution, and that the court has assumed jurisdiction over it for that purpose. It has not yet made its final order of distribution, but by the appointment of its receiver it has assured all persons interested that it will make that order in due time, and until it settles the terms thereof it will hold

it for that purpose. If one or more creditors can, under such circumstances, obtain priority by judgment and execution, then the Supreme Court is powerless to accomplish what it has undertaken to do; and if the parties to the action may discontinue it, vacate the order appointing the receiver, and resume control of the property, then a court is only the creature of the will of others, and not an independent power clothed with the authority to do what it has undertaken; and though, at the instance of owners, it has assumed a trusteeship for the benefit of all creditors, it must, nevertheless, suspend its functions at the beck and instance of those persons who first invoked them. Such a conclusion, it seems to us, must be unsound. The court holds the property of the insolvent firm for equal distribution, and will not, and ought not to surrender its trust, or do any act which will prevent it from doing full and complete justice to all parties interested. Neither can its action be unreasonably delayed. The property, or fund from its sale, is in the hands of the court, and any interested may quicken action by proper application. There can be, it seems to us, no sound or good reason for taking·from the court the trust it has assumed. It holds the property in trust for the benefit of those who may be entitled to it, and all can be fully protected. Why should it, too, upon an *ex parte* application, without hearing and notice to all interested, grant the relief asked for by the motion of the appellants ? There may be other parties not heard who have superior equities upon the fund in its hands, even though an equal distribution is defeated. It should not, therefore, be paid out until, in some way, the rights of all are settled and ascertained. It would be manifestly unjust, as it seems to us, at this stage of the proceedings, at least, to part with the property or any part thereof.

It may, however, be argued that the principles which have been enunciated are at war with adjudged cases, and particularly with *Waring* v. *Robinson* (1 Hoff., 524); *Adams* v. *Hackett* (7 Cal., 187); *Adams* v. *Woods* (8 id., 153); *Adams* v. *Woods and Haskell* (9 id., 24), which are relied upon to sustain the appeal. If those cases do decide that insolvent partners cannot in good faith come into a court of equity and ask it to make a just and equal distribution of the partnership property among creditors,

and when the court has entered upon the execution of the trust with the consent of all the owners, by the appointment of its receiver thereof, that its jurisdiction and power can be thwarted by the action of one or more creditors seeking a priority by judgment and execution, then they cannot be acquiesced in and followed by this court. A court of equity has as full and ample power to administer and dispose of the insolvent debtor's estate, voluntarily intrusted to it by its owner, as the federal bankrupt court had over the estate of an insolvent debtor, who instituted voluntary proceedings in bankruptcy. An action at law in behalf of any creditor can no more take the funds and property out of the hands of the one court than out of those of the other; and whilst, to a certain extent, it is true that in both cases the proceeding is somewhat subject to the control of the parties instituting it, yet it must also be true, that when the court has acted upon the application, and vested the property in the one case in an officer called an assignee, and in the other in one called a receiver, but both possessing the same power and appointed for the some purpose—that of holding the property pending a final decree—in neither instance can the parties, who have placed the property in the hands of the court, by their own action, deprive the court of its power to distribute. The property, when once in the hands of the court, is pledged and dedicated to the objects of the proceeding, and in it others become interested who have a right to invoke the action of the tribunal which has assumed control over it. But the cases cited are unlike the present. In all of them, the suit was instituted by the one partner against the other for his own protection against the alleged fraudulent conduct of such other. They all lacked the elements of admitted insolvency, and the consent of all the partners to the court's taking the property and holding it for a final, just, and equal distribution among all creditors. It is possible, though it is not fully conceded to be sound, that when one partner seeks the aid of the court against the other, and the tribunal invoked simply holds the property for the benefit of its owners, it may permit one creditor to obtain priority over another. Perhaps in such a case, as the court has not taken the preliminary step for the purpose of making a final distribution among creditors, it might be plausibly argued that

the creditors seeking payment by action are not endeavoring to defeat the trust which the court has assumed. In the case before us, however, no such argument can possibly apply. The court has assumed to act, with the consent of the original owners, to make a just and equal distribution. It holds the property for that purpose. Creditors are the *cestui que trusts* of the court, and they cannot be defrauded unless the court lends itself to the fraud. The tribunal which has assumed to act must proceed, and such action can neither be thwarted nor defeated by the action of any creditor.

The order appealed from must be affirmed, with ten dollars costs and the disbursements for printing.

BOARDMAN, J., concurred.

LEARNED, P. J. :

I cannot agree with my brethren upon the more important question presented ; that is, whether the appointment of a receiver *pendente lite*, in an action brought by one partner against another to dissolve the partnership, prevents a creditor from obtaining, prior to judgment in that action, a preference over other creditors. Where partners make a voluntary assignment for the benefit of creditors, they cannot afterwards revoke it. Such an assignment is, therefore, not analogous to the appointment of a receiver *pendente lite*. No authority is cited showing that, before judgment, the parties to such an action cannot discontinue of their own volition. *Whiteside* v. *Prendergast* (2 Barb. Chy., 471), cited by the respondent, does not touch this point at all. And if the parties may voluntarily discontinue the action, then clearly the appointment of a receiver *pendente lite* is not irrevocable ; as is an assignment for the benefit of creditors.

It is true that the court will not permit the possession of its receiver to be disturbed by actions. This is because the proper mode of obtaining relief as to property held by him is to apply to the court on motion, since he is the officer of the court. But this principle does not determine whether liens may not be acquired as to property held by a receiver ; which liens the court will recognize and enforce. (*Stewart* v. *Beale*, 14 N. Y. S. C., 405 ; *Myrick* v. *Selden*, 36 Barb., 15.)

The case of *Noe* v. *Gibson* (7 Paige, 513) ; *Bailey* v. *Belmont* (10 Abb. [N. S.] 270), and *O'Mahoney* v.*Belmont* (62 N. Y., 133), decide nothing on the question, whether or not a right may be acquired by a creditor, under circumstances like the present, which the court will enforce on motion.

I suppose that it cannot be claimed that any greater right was acquired by the receiver in this case, from the fact that he was appointed by consent, than would have been acquired if he had been appointed on the plaintiff's motion, opposed by the defendant. Suppose, then, that, after such an appointment of a receiver *pendente lite*, the action proceeds to judgment, and it is then decided that the parties were not partners, could it be pretended that creditors of the parties had any rights in the receivership ? The receivership would necessarily be at an end. So, if in this present case the defendants in their answer should deny the existence of the partnership, and the plaintiff should make no proof thereof on the trial, then the receivership must come to an end, and no creditors of the parties could claim any rights therein.

The mistake, as I apprehend, is this : a receiver *pendente lite*, merely holds the property till some decision is made. His appointment decides nothing and fixes no rights. On the contrary, when a judgment is granted, as in a suit like this for dissolution of the partnership and for distribution of the assets among creditors of the partnership, and thereupon a receiver is appointed for that purpose, rights are thereby established and creditors become *quasi* parties ; for they are then called in to prove their claims.

These positions are sustained by decisions, and no decisions to the contrary are cited. In *Waring* v. *Robinson* (Hoff. Chy., 524), the court refers to a decision of its own in *Pratt* v. *Robinson*, that a judgment obtained adversely to partners was entitled to priority. The court further says: "Until decree upon a partner's bill, the suit is wholly within the control of the parties. The complainant may dismiss his bill when he chooses; but a decree pronouncing a dissolution assumes the control of the assets." The same view is taken in *Ellicut* v. *U. S. Ins. Co.* (7 Gills [Md.], 307), the details of which case I need not state. The subject was considered very carefully in three cases in

California involving large amounts. (*Adams* v. *Hackett*, 7 Cal., 187; *Adams* v. *Woods*, 8 id., 152; and *Adams* v. *Wood and Haskell*, 9 id., 27.) In the last of these cases the court says that the case was under the plaintiff's control until a decree of dissolution. And again, in the first of the cases, " that until a dissolution has been judicially declared, and a receiver ordered to make a *pro rata* distribution of the partnership assets among the creditors, they are not prevented from resorting to adverse proceedings; and that when a creditor does resort to such proceedings, he may thereby gain a preference over those creditors who are less diligent." If anything were needed to show the good policy of this rule, I think the proceedings in the present case would be sufficient. One partner commenced an action, March twenty-second, against his copartners. On the twenty-sixth he and they stipulated that the *plaintiff himself* should be appointed receiver *without giving security*; and an order was actually made appointing the plaintiff receiver of his own firm, without giving security, and authorizing him to appropriate so much as might be necessary of funds arising from sales or collections, as well as money on hand, *to the payment of all just claims, accounts or debts due and owing, or to become due, and owing to any person or firm.* These claims, accounts and debts were not required to be paid *pro rata;* and the receiver was to continue the business as he might deem advisable, and reimburse himself for advances, *engagements*, and necessary expenses. If such an order is to prevent a diligent creditor from acquiring rights by regular proceedings, it is certainly not because it was made in the interest of creditors generally.

I might further illustrate these views by a reference to the appointment of a receiver *pendente lite* in an action for foreclosure. It certainly could not be pretended that such an appointment would prevent a diligent creditor from acquiring a lien on the property in litigation, which would be recognized on the final decree. For these reasons I think that the appointment of the receiver *pendente lite*, in the action to dissolve the partnership, did not prevent creditors of the partnership from proceeding with their actions against the firm, and with the supplementary proceedings thereon; that while they are not to be permitted thereby to disturb the receiver's possession, they can, by such actions and proceedings, acquire a lien on

the property in his hands which the court should enforce by motion; and in my opinion the order should be reversed.

Order affirmed, with ten dollars costs and disbursements for printing.