FRANK HAMM, RECEIVER, v. J. STONE & SONS LIVE STOCK CO. ET AL.

Delivered April 8, 1896.

**1. Receiver—Accounting.**

Where, upon appeal in a case wherein a receiver was appointed upon application of plaintiff, the decision of the Supreme Court is in favor of the defendant, the trial court has authority, either upon its own motion or that of the defendant, to require an accounting on the part of the receiver, and a return of the property to the owner.

**2. Same—Right of Jury Trial Upon Motion.**

Where defendants have filed a motion for an accounting by the receiver, and a return of the property, and the receiver's report is controverted, and the matter referred to a master in chancery, and issues of fact are raised by the receiver's objections to the master's report, the receiver is entitled to have tried by a jury such issues of fact.

**3. Same—Liability of Receiver.**

Ordinary care is the test of the receiver's responsibility, and he is therefore not necessarily liable for the loss of cattle merely because he allowed them to remain on the range, nor for property burned, merely because he failed to insure it.

**4. Costs on Appeal.**

Where the judgment is reversed on appeal, the appellant will nevertheless be charged with a part of the costs of the transcript, for matter improperly included therein.

APPEAL from Dallas.   Tried below before Hon. R. E. BURKE.

*George H. Plowman* and *Kearby & Muse*, for appellant.—1. The proceeding was not authorized by law, and denied appellant a trial of the issues of the ownership of the property taken, and held him liable for property not taken by the receiver and conveyed by the company.

2.   This being a trial of a civil cause in the District Court and appellant having made application in open court on the first day of the term for the right of trial by jury, and having then and there paid the jury fee, the court erred in denying appellant a jury trial.   No citizen of this State shall be deprived of life, liberty or property, except by the due course of the law.   Constitution of Texas, art. 1, secs. 15, 19, art. 5, sec. 10; Amendment to U. S. Constitution, art. 7; Rev. Stats., arts. 3059, 3060, 3061, 3066, 3069; Davis v. Davis, 34 Texas, 15, 23; Cockrell v. Cox, 56 Texas, 673; Dean v. Sweeney, 51 Texas, 242, 469; Gallagher v. Goldfrank, 63 Texas, 474; Allen v. Pummer, 71 Texas, 546; Warner v. Crosby, 75 Texas, 297; Noel v. Denman, 76 Texas, 308; Dallam, 380; Moral v. Fitzgerald, 36 Texas, 275; Taylor v. Bonnet, 38 Texas, 523; Burton v. Barbom, 104 U. S. (Law C. Ed.), 672.

*U. F. Short* and *Bennett Hill*, for appellees.—1. The receiver was not entitled to a jury in this case, because the matter had been fully tried and all the evidence heard before the master, and he had appeared before said master with his attorneys and had a full and fair hearing of the case.   As receiver he was an officer of the court and bound to obey its orders, and the court had the right to compel him to make a full re-

port and to account for all the property which had gone into his hands as such receiver, without the intervention of a jury. A receiver, being an officer of the court appointing him, subjects himself by the acceptance of the office to the orders of the court and is not entitled to demand a jury when called upon to make a report of his accounts as such receiver and to turn the property or funds in his hands into court. Mabry v. Harrison, 44 Texas, 295; Brown v. Warner, 78 Texas, 543; Turner v. Cross & Eddy, 83 Texas, 224; Railway v. Bledsoe, 2 Texas Civ. App., 89; 20 Am. & Eng. Ency. Law, 11, 13, 14, 109, 110 and note, 137, 158; 2 Beach on Modern Eq. Practice, sec. 656; High on Receivers, secs. 175, 190, 797; Beach on Receivers, secs. 24, 743 and note; Akers v. Veal, 66 Ga., 302; McBride v. Clark, 1 Mo., 233; Davis v. Gray, 16 Wall, 203.

2. The court had the right to make the receiver report to the court the property taken possession of by him as receiver, and to return the same or the value thereof into court to be paid to whoever was entitled to it, with or without a motion from any one. High on Receivers, secs. 544, 815; 20 Am. & Eng. Ency. Law, 158, and note 1; Beach on Receivers, sec. 748, p. 686, note; Minfield v. Bacon, 24 Barb., 154; Adams v. Wood, 8 Cal., 306; Beach on Modern Eq. Practice, sec. 727.

3. The receiver was an officer of the court, subject to its orders, and it was the duty of the court to compel him to disgorge assets which he had wrongfully appropriated, and the proceedings against him in this matter were in all things regular. See authorities above cited, and Sayles' Rev. Stat., art. 1470; 20 Am. & Eng. Ency. Law, 919; 2 Beach on Modern Eq. Practice, 717, 727, 748; High on Receivers, secs. 801-4.

FLY, ASSOCIATE JUSTICE.—On the 3d day of June, 1886, C. A. Keating, claiming to own shares in the J. Stone & Sons Live Stock Company, sued it and others and alleged that said company was the owner of a ranch in Van Zandt County, Texas, as well as certain horses, mules, cattle, hogs and goats, of the aggregate value of $34,950, and that the said company and the other defendants had confederated together for the purpose of fraudulently disposing of the property and assets of said corporation. An injunction was prayed for and granted to restrain the disposal of the property, and Frank Hamm, the appellant, was appointed receiver to take charge of the property and assets of said corporation. Hamm accepted the receivership and entered upon the duties of the position. Upon the trial in the District Court a verdict was returned by instruction against Keating, and on appeal it was affirmed by the Supreme Court. Keating v. Stone & Sons Live Stock Co., 83 Texas, 467. The opinion of the Supreme Court was rendered on February 19, 1892. On May 2, 1893, William Frick, John Morley, Ernest Stone, James Drew, George W. Loomis and J. Stone & Sons Live Stock Company, defendants in the above named case of Keating v. Live Stock Co., filed a motion setting up the facts as above set out, the appointment of Hamm as receiver, and that the said receiver had

taken possession of the property, and that he had sold and disposed of the personal property, and received payment therefor. It was further stated that Hamm had never rendered any account of the property, and neither delivered it to defendants nor paid it into the registry of the court, and it was prayed that the receiver be made to account for and pay over all sums received from the sale of the property into the court, and that if any of the property remained unsold, it be delivered to the defendants. The receiver answered by special exceptions, pleas of limitation, and by a report of his proceedings as receiver. He reported that he had endeavored to obtain possession of the assets and effects of the corporation, but found that the whole of the property had been sold, before the receiver was appointed, to David Stone and Geo. Loomis, and that he received no money, funds or property belonging to the J. Stone & Sons Live Stock Company, and asked that he be discharged. This report was made in obedience to an order issued by the District Court as prayed for by appellees. The report was excepted to by appellees, as being vague, uncertain, evasive and false, and a list of property was filed that it was alleged had gone into the hands of the receiver amounting in value to $3491. It was prayed that a master be appointed to look over the accounts of the receiver and to take and hear evidence as to how much and what property came into the hands of the receiver, and that he report the same to the court. Frank Reeves was appointed master in chancery, and clothed with all the powers and authority of said office, to make a full and thorough investigation of all the matters, affairs and accounts of Frank Hamm, and to ascertain what money, property or funds of any kind had been received by and come into the hands of said Hamm, as receiver, and the value of the same, and what disposition had been made of it, and to that end he was given power to summon witnesses, hear evidence, and do all things necessary for a full investigation of the receivership. Reeves made a report as master, but upon exception that he had not been sworn before entering upon the discharge of his duties, the report was referred back to the master, who then resigned. A. S. Lathrop was then appointed master, with the same powers given to Reeves.

Afterwards, on March 15, 1894, Lathrop reported, showing that the personal property of the corporation was of the value of $3251.50, and that the receiver had taken possession of the land and all the personal property, except ten head of horses and thirty head of cattle, of the value of $500, which the report adds it was the duty of the receiver to take into his possession. It was further reported that Hamm did not file an inventory of the property taken by him, and never asked as to what disposition he should make of the property, although he had sold a large portion of it; that some of the property was destroyed by fire after the receiver had possessed it, and no insurance had been placed on it. The master found that Hamm should pay into court $3251.50, with legal interest from January 1, 1887, less such sum as the court should

allow for expenses and compensation.    On the same day voluminous exceptions were filed to the report.

Appellant Hamm demanded a jury to try the issues made by his exceptions, and fully complied with the law in regard thereto, but his demand was refused on the ground that in law he was not entitled to a trial by jury  To this action of the court a bill of exceptions was reserved by appellant.    Upon a hearing of the cause by the district judge, the report of the master was confirmed, with the addition that the receiver be allowed the sum of $701.65 for his expenses and services.    After allowing this credit, the judgment, with interest, amounted to $4200, which the receiver was ordered to pay into court within sixty days, under the penalty, if the money was not paid within the time mentioned, that he should be confined in jail until the payment was made.    Execution was also, in event of failure of payment, ordered against the receiver, as well as his bondsmen, who were not before the court.    A fee for the master of $100 was taxed up as costs against the receiver.

The decision of the Supreme Court being in favor of the defendants in the case of Keating v. J. Stone & Sons Live Stock Company, the District Court had the authority, either upon its own motion or that of the defendants, to require an accounting on the part of the receiver, and a return of the property to the owners thereof.    High, Receivers, sec. 162; O'Mahoney v. Belmont, 62 N. Y., 133.

When the motion was made by appellants to require an accounting on the part of the receiver, the court undoubtedly had the authority to require the accounting, and upon a failure or refusal upon the part of the receiver, he could have been adjudged in contempt and compelled to account.    When however he filed his account, and objections were raised to it by the appellees, there arose, to all intents and purposes, a suit between the receiver and the appellees. He was undoubtedly a party to the suit, and was clothed with all the constitutional rights guaranteed to any other party litigant.    Hinckley v. Railway, 94 U. S., 467; Renn v. Samos, 42 Texas, 104.

The objections made to the report of the master in chancery raised questions of fact upon which the right of trial by jury, guaranteed by the Constitution, attached and belonged to appellant, and the fact that he was a receiver did not deprive him of this privilege.    It does not matter what the practice may have been in chancery courts, the Constitution and laws of Texas guarantee that the right of trial by jury shall remain inviolate, the Constitution confining the power of the legislature in connection with this right to the passage of laws regulating it and maintaining its purity and efficiency.    The receiver is a servant of the court from which he derives his power, and is subject to its orders and decrees.    He stands much in the same relation to a court of chancery that a sheriff does to a court of law.    While he is under the control and subject to the orders of the court, he can sue and be sued in his official capacity in any court of the State, and when he has thus sued or been sued, he has exactly the same rights as any other

litigant. Had the appellees seen fit, they could, instead of filing a motion in the original suit, have brought an entirely independent suit to have compelled an accounting, and an auditor could have been appointed, whose powers are analogous to those of a master in chancery (Whitehead v. Petrie, 15 Texas, 7), and no one would have called in question his right to a trial by jury. Neither can the right be denied him in this case. The case of Renn v. Samos, 42 Texas, 104, was a case similar to this, and was tried by a jury, and while the right of the receiver to such trial was not questioned, his right of appeal was, but the court held that he had been sued and had the rights of any other litigant. We are not called upon to pass on what the court may have had the authority to do under other circumstances, but we confine ourselves to the case presented, where issues of fact have arisen between citizens of this State and the right to have the differences passed upon by a jury has been denied by the court. An investigation of the facts does not convince us that the result would have been the same had the cause been tried by a jury, and the refusal of a trial by jury alone would be sufficient to necessitate a reversal of the judgment.

In order to fix liability for the loss of the horses and cattle that were running upon the range and were never in possession of appellant, and for the property burned, the loss must be traced directly to the negligence of the receiver. The fact of allowing the animals to remain upon the range, or a failure to insure the burned property, would not of themselves render appellant liable for the value of the property. Ordinary care is the test of the responsibility of the receiver.

It is not necessary to notice the other assignments.

The whole of the testimony taken before the master has been embodied in the transcript, and covers eighty two pages of a record of two hundred and seventy-two pages. There is other matter besides that should not have found a place in the record. This state of the record is chargeable to appellant.

The judgment of the District Court will be reversed and the cause remanded, and one-third of the costs of the transcript will be assessed against appellant, the other costs against appellees.

*Reversed and remanded.*