## BATES v. INTERNATIONAL CO. OF MEXICO.

(Circuit Court, S. D. California. January 11, 1898.)

### No. 139.

1. RECEIVERS —POWER TO APPOINT—PROCEEDINGS SUPPLEMENTARY TO EXECUTION.

Under Code Civ. Proc. Cal. §§ 714, 720, providing for proceedings supplementary to execution, in the nature of a creditors' bill, and section 564, authorizing a receiver, after judgment, to carry the judgment into effect, a court may appoint a receiver for a judgment defendant in such supplementary proceedings.

2. EXECUTION—SUPPLEMENTARY PROCEEDINGS—SERVICE OF ORDER.

Code Civ. Proc. Cal. §§ 1015, 1016, provide for service of papers on the attorney of record of a party, but that such provisions shall not apply to service of process, or of any paper to bring a party into contempt. *Held,* that where a corporation against which judgment had been rendered in a contested case withdrew from the state, and transferred all its property therein, and it appeared that it was conspiring with the transferee to defeat collection of the judgment, service of an order requiring it to appear in proceedings supplementary to execution, made on its attorney of record in the case, would be sustained as legal and effective.

3. SAME—FOREIGN CORPORATIONS.

The provision of Code Civ. Proc. Cal. § 714, that no judgment debtor must be required to attend before a judge or referee out of the county in which he resides, has no application where the defendant is a foreign corporation.

This was an action in which Frank E. Bates recovered a judgment against the International Company of Mexico. The present hearing

was in proceedings supplementary to execution, in which, on petition of Clarence L. Barber, assignee of the judgment, the court appointed a receiver for the defendant corporation. Defendant moves to vacate such order.

C. L. Barber and White & Monroe, for complainant.
Wm. J. Hunsaker, for defendant.

ROSS, Circuit Judge. The International Company of Mexico is a private corporation organized under and pursuant to the laws of the state of Connecticut, and having its principal office in the city of Hartford, of that state. It acquired large property interests, principally in Lower California, Mexico. Subsequently the Mexican Land & Colonization Company, Limited, was incorporated under the laws of Great Britain, having its principal office in the city of London. On the 4th day of May, 1889, an agreement in writing was entered into between the International Company of Mexico (therein and hereinafter called the American Company) and the Mexican Land & Colonization Company, Limited (therein and hereinafter called the English Company), by which, among other things, the American Company should transfer and sell, and the English Company should accept a transfer of and purchase: First, all and singular, the concessions belonging to the American Company, or claimed by it, or by any person or corporation in trust for it; second, all the lands, estates, properties, chattels, choses in action, and effects, in the widest sense, owned or held by the American Company, or by any person or persons in trust for it, and, in so far as transferable, all the rights, privileges, and franchises of the American Company; third, the benefit of all contracts or engagements to which the American Company is on the day of the date of the agreement entitled, including all moneys, debts, and trust interests owing or belonging to the American Company on any account, or by any means whatsoever, or to which any persons or corporations are, as trustees for it, entitled; fourth, all the stock, shares, obligations, and rights of any kind held by the American Company of, in, and against any of the companies and undertakings whose names are set out in the second schedule annexed to the agreement, with any stocks, shares, bonds, debentures, and obligations, and rights of any kind, in and against any other companies, which the American Company is entitled to, or any person or corporation may be entitled to in trust for it; fifth, all the debentures of the American Company, created but unissued; sixth, the good will of the business carried on by the American Company, and all other, if any, its property and undertakings, of any kind or description whatsoever or wheresoever, either held by itself, or by any person or corporation in trust for it,—subject, however, to a certain mortgage lien or charge, not important to mention. The consideration for such transfer and sale the agreement declared to be the undertaking by the English Company of all the responsibility and liability of the American Company to pay the said debentures and the interest thereon, and the undertaking by the English Company of all the obligations, debts, engagements, and liabilities properly incurred by, or existing against,

the American Company, and the allotment to the several persons who at the date of the agreement constituted the stockholders in the American Company, or to nominees of such persons, respectively, of shares of the English Company, at the rate of one share of the English Company, of the nominal value of £10, for each share held by such persons, respectively, in the American Company, of the nominal value of $100; such shares of the English company being issued to the said several persons, respectively, as fully paid up, and being the shares numbered from 1 to 200,000, both inclusive: provided, that, before the English Company shall be required to allot any such person any shares, such person shall deliver or transfer to the English Company, or its nominees, his shares in the American Company, with a good title, free from incumbrance,—and with certain other provisions not necessary to be stated. Another clause of the agreement between the two companies was that the American Company should forthwith take the necessary steps for the winding up of its affairs and the dissolution of the company, and proceed therein as quickly as possible, acting in all such proceedings with the approval of the English Company, and that from and after the execution of the agreement the American Company should not, except under the direction of the English Company, directly or indirectly, carry on its business or undertakings, or incur any further liabilities in connection therewith, and should appoint, and by the agreement did appoint, Sir Edward George Jenkinson, K. C. B., its general manager, with full power to carry on its business and manage its affairs, including power to appoint submanagers, servants, and workmen, subject to the stipulations contained in the agreement, and to superintend the arrangements for the dissolution and winding up of the American Company. Another provision of the agreement declared that from its date all business carried on should be considered as carried on for account of the English Company, which latter company should pay the expense of the conveyance of the property to it. The ninth clause of the agreement is in these words:

"The American Company will forthwith, on the execution hereof, and at latest within one month (time being of the essence of the contract), hand over to the English Company, or its agents, its common seal, and all charters, concessions, books, accounts, correspondence, papers, documents, and vouchers, of every kind or description, connected with, or relating to, the American Company."

And the eleventh clause declares that the American Company, and all persons claiming through it, will forthwith and from time to time, until dissolution, execute and do, and concur in, all instruments and things necessary "for vesting the whole of the said property in the English Company, or its nominees."

Among the obligations of the American Company thus assumed by the English Company were some held by one Frank E. Bates, for the alleged breach of which Bates commenced suit against the International Company of Mexico in the superior court of San Diego county, Cal., which action was, on the motion of the defendant thereto, transferred to this court, on the ground of diverse citizenship of the parties. Service of process in that action was had upon the legal representa-

tive of the defendant in the city and county of San Diego, where it at the time had an office and an agent. The defendant to the suit appeared by counsel, and, after a trial upon the merits before a jury, a verdict was rendered in favor of the plaintiff in the action, and against the defendant thereto, for the sum of $120,600 damages, upon which verdict judgment was entered in favor of the plaintiff and against the defendant for that sum, together with $682 costs, amounting in the aggregate to $121,282, lawful money of the United States, with interest thereon at the rate of 7 per cent. per annum until paid. No writ of error was taken, and the judgment became final and conclusive. Upon it a writ of execution was on December 12, 1892, duly issued to the United States marshal for the Southern district of California, which execution was duly returned by the marshal wholly unsatisfied on the 31st day of December, 1892. On the 23d day of January, 1896, Clarence L. Barber presented to this court a verified petition, setting out, among other things, the facts already stated, and further alleging the assignment to him, for value, of the judgment entered in the case of Bates against the International Company of Mexico, and his ownership thereof, and, further, that that action was defended by both the American and the English Companies, although the latter was not formally made a defendant thereto; that no appeal from that judgment or writ of error has been taken, and the judgment has become final; that no payment has been made on the judgment, and that the American Company has no property or assets of any kind, except the promise to pay its obligations and liabilities made by the English Company in the agreement already mentioned; that all of the stipulations of that agreement have been fully performed, except the payment of the petitioner's demand, and the failure to dissolve the American Company; that most, if not all, of the property constituting the subject-matter of the agreement between the two companies, is situated in the republic of Mexico and in Great Britain, and has been wholly appropriated by the English Company, and largely transferred by it to other parties: that the petitioner has demanded payment of the judgment so assigned to and owned by him, from both companies, which demand both of them have refused to comply with, and that the petitioner has demanded of the American Company that it enforce that provision of the agreement of the English Company to pay the amount of the said judgment, and offered to indemnify the American Company against all costs and expenses incurred in that behalf, but that the American Company refused to comply with that demand; that the two companies, according to the information and belief of the petitioner, are fraudulently colluding with each other to defeat the petitioner's judgment, and to deprive him of all remedy thereon; that the American Company has no office or secretary in the state of Connecticut, and has withdrawn from the transaction of business in that state; that it has not been wound up, nor have any proceedings been taken for winding it up; that, on account of its practical withdrawal from that state, it is difficult to get adequate process upon it; and that the English Company interposes all obstacles lying in its power to prevent affiant from recovering upon the said judgment. The petitioner therefore asked, among other

things, for an order to be made and served on the American Company, requiring it to appear and answer concerning its property before the judge of this court at a time and place to be specified; that the petitioner be authorized to bring suit in the name of the American Company, or otherwise, to recover upon the said judgment, or that a receiver be appointed to enforce the agreement between the English and American Companies for the benefit of the petitioner and all other creditors, if any, of the American Company; that the American Company be required to assign the said agreement to such receiver, and all causes of action it may have against the English Company; that such receiver be directed to sue the English Company in behalf of the creditors of the American Company, or for such other order or relief as may be conformable to sections 714–720 and 564 of the Code of Civil Procedure of the state of California.    Upon that verified petition, and the records of the court in the action of Bates against the International Company of Mexico, this court on the 2d day of March, 1896, made and entered an order to the effect that the International Company of Mexico appear and answer concerning its property before the judge of the court on the 16th day of March, 1896, at 10:30 o'clock in the forenoon of that day, at the court room of the court, and that a copy of the order be served upon the attorneys of record for the defendant in the action on or before March 5, 1896.    At the time thus appointed, and upon proof of the service of the order upon the attorneys of record of the defendant to the action, and upon proof of the facts already stated (no appearance being made by or for the defendant to the action), an order was entered authorizing and empowering the said judgment creditor, Clarence L. Barber, to institute any and all necessary and proper action or actions against the said Mexican Land & Colonization Company, Limited, in any and all proper courts, in his own name, or in the name of the said American Company to his use, for the enforcement of the said agreement of May 4, 1889, and the recovery of said judgment, and the moneys due and to become due thereon, and also appointing the said Clarence L. Barber receiver of the defendant, the International Company of Mexico, with power and authority to bring any and all suits, and to take any and all proceedings, necessary and proper for the collection of the said judgment.

Application is now made, on behalf of the International Company of Mexico, for an order vacating and setting aside the order of March 16, 1896, upon the following grounds:    (1) That the court had no jurisdiction to make the order appointing the said Barber receiver; (2) that the order made March 2, 1896, directing a copy thereof to be served upon the attorneys of record for the defendant in the action, was made without authority of law, and is void; (3) that no service of that order was made on the defendant to the action; (4) that it appears from the papers in the case, and upon which the order was based, that the defendant to the action did not have any property within this judicial district; (5) that it appears therefrom that the defendant to the action was a nonresident of the state of California and of this judicial district, and that it was not doing business therein, and that the defendant did not have a business or managing agent within this state, or within this judicial district; (6) that each

of the orders of this court mentioned were obtained by false and fraud-ulent statements and representations made by the said Barber. The present motion is based upon the records and files in the case, and upon the affidavit of Edward D. Robbins, and the deposition of George Fuller. The affidavit of Mr. Robbins shows that he is a director, vice president, and acting president of the American Company, and re-sides in the county of Hartford, state of Connecticut; that three other directors of the American Company also reside in the county of Hart-ford, state of Connecticut; that the American Company has not been dissolved, and is an existing corporation, against which the said Bar-ber has pending in one of the superior courts of the state of Connecti-cut a suit, commenced by him August 2, 1895, by which he seeks to recover the amount of the Bates judgment.

I do not think that the pendency of the suit last referred to has any bearing upon the question now presented. The facts heretofore shown to this court, and which form the basis of its order of March 16, 1896, remain uncontroverted. It is not disputed that the Ameri-can Company turned over all of its property of every character to the English Company under the agreement of May 4, 1889, and that one of the considerations for such transfer was the assumption by the latter of all of the obligations and liabilities of the former, and the promise of the English Company to pay them. It is not disputed that among the liabilities thus assumed by the English Company were the claims which form the basis of the action in this court of Bates against the International Company of Mexico. It is not disputed that both of the companies contested that action, and that the judg-ment given therein subsequently became final and conclusive, and was assigned to Barber by Bates. It is not disputed that both companies refused to pay the judgment. It is not disputed that the American Company refuses to take any steps to compel the English Company to perform its agreement to pay the liability of the American Com-pany established by the judgment in Bates against the International Company of Mexico, after a contest upon the merits by both com-panies, and notwithstanding an offer by the judgment creditor to in-demnify it against all costs in that behalf incurred. Nor is it dis-puted that the English Company controls the American Company, as in and by the agreement of May 4, 1889, it was provided should be done. The charge of the judgment creditor that the two companies are combining and colluding to avoid the judgment in his favor, and to defeat its payment, seems, therefore, well founded. Are the courts powerless to prevent such a scheme from being effective? Perhaps so. But certainly the court giving the judgment should go to the extreme limit of its authority to compel obedience to its provisions. It is provided by sections 714 and 720 of the Code of Civil Procedure of California as follows:

"Sec. 714. When an execution against property of the judgment debtor, or of any one of several debtors in the same judgment, issued to the sheriff of the county where he resides, or if he do not reside in this state, to the sheriff of the county where the judgment roll is filed, is returned unsatisfied in whole or in part, the judgment creditor, at any time after such return is made, is entitled to an order from a judge of the court, requiring such judgment debtor to appear and answer concerning his property before such judge, or a referee

appointed by him, at a time and place specified in the order; but no judgment debtor must be required to attend before a judge or referee out of the county in which he resides."

"Sec. 720. If it appears that a person or corporation alleged to have property of the judgment debtor, or to be indebted to him, claims an interest in the property adverse to him, or denies the debt, the court or judge may authorize, by an order made to that effect, the judgment creditor to institute an action against such person or corporation for the recovery of such interest or debt; and the court or judge may, by order, forbid a transfer or other disposition of such interest or debt until an action can be commenced and prosecuted to judgment. Such order may be modified or vacated by the judge granting the same, or the court in which the action is brought, at any time, upon such terms as may be just."

By section 564 of the same Code it is provided that a receiver may be appointed "after judgment, to carry the judgment into effect."

The supreme court of California held in the cases of Adams v. Hackett, 7 Cal. 201, and Bank v. Robinson, 57 Cal. 520, that these proceedings were intended as a substitute for the creditors' bill in equity; and in the case of Hathaway v. Brady, 26 Cal. 586, the same court held that in such supplementary proceedings a receiver may be appointed. In Manufacturing Co. v. Shatto, 34 Fed. 380, Judge Nelson appointed a receiver on similar proceedings.

It is insisted, however, on the part of the judgment debtor, that the service of the order to answer concerning its property provided for by section 714 of the California Code of Civil Procedure, on the attorney of record for the defendant in the action in which the judgment was given, was no service at all, for the reason, as is contended, that the attorney's right of representation ceased with the entry of the judgment. It is further insisted that the order was of such a character that, to be effective, it must have been served on the judgment debtor personally. As the case shows that the judgment debtor had, prior to the issuance of the supplementary proceedings, entirely withdrawn from the state, and had put all of its property into the hands of another corporation, this is tantamount to saying that it could entirely evade the proceedings provided for by the statutes of the state supplementary to execution, where such execution is returned unsatisfied in whole or in part. Section 1015 of the Code of Civil Procedure of California provides that:

"When a plaintiff or a defendant, who has appeared, resides out of the state and has no attorney in the action or proceeding, the service may be made on the clerk for him. But in all cases where a party has an attorney in the action or proceeding, the service of papers, when required, must be upon the attorney instead of the party, except of subpœnas, of writs and other process issued in the suit, and of papers to bring him into contempt."

And the next section (1016) is as follows:

"The foregoing provisions of this chapter do not apply to the service of a summons or other process, or of any paper to bring a party into contempt."

Conceding that the order on the judgment debtor under consideration was of such a nature that ordinarily its service is required to be upon an officer of the corporation, still, under the circumstances disclosed by the record in this case, I am of the opinion that it was sufficient to serve it upon the judgment debtor's attorney of record. In Golden Gate Hydraulic Min. Co. v. Superior Court, 65 Cal. 187, 3 Pac.

628, where, among other things, it was insisted that it was essential to the validity of the service of an order to show cause upon a corporation why it should not be adjudged guilty of a contempt of court, that such service must, under the provisions of sections 1015 and 1016, supra, be made upon "the president or other head of the corporation, secretary, cashier, or managing agent thereof," the supreme court of the state said:

"It may be conceded, in the view we take, that the order to show cause is 'a paper to bring a party into contempt,' within the meaning of sections 1015 and 1016, and that ordinarily the service of such paper, like that of summons, must be upon 'the president or other head of the corporation, secretary, cashier, or managing agent thereof.' But in the case at bar it was made to appear to the court, by satisfactory evidence, that diligent efforts had been made to serve an officer or managing agent, that the officers of the corporation had attempted to resign their offices, and that they had concealed themselves to avoid service of the order, whereupon the court ordered that service be made upon one or more of the attorneys of defendant. The question to be considered is: When a party charged with contempt in disobeying a legal order willfully conceals himself, to avoid service of an order to show cause why he should not be adjudged guilty of a contempt, is the court powerless to proceed, or to prevent the continued disregard of its lawful order? It is obvious that the provisions of the Code referred to do not contemplate such concealment. Certainly, it is not to be tolerated that a party may defy the court, and continue to violate a restraining order until personal service can be had of 'the paper to bring him into contempt.' Every court has inherent jurisdiction to punish a contempt, and the 1209th section of the Code of Civil Procedure, in its enumeration of the acts which are contempts, includes 'disobedience of any lawful order,' etc. And section 187 of the same Code, which is but declaratory of the common law, reads: 'When jurisdiction is, by the constitution or this Code, or by any other statute, conferred on a court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction if the course of proceeding be not specifically pointed out by this Code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this Code.' The defendant in the action had intrusted its attorneys with the protection of its interests and the defense of its rights. We can see no abuse of authority on the part of the court in directing that the order to show cause should be served on an attorney, since it was made to appear that the defendant, by reason of its own acts, could not be served personally. The process was 'suitable,' and the mode adopted by the court 'conformable to the spirit of the Code.'"

The reasoning of the court in the case cited (which I think sound, and which was approved by the same court in the subsequent case of Eureka Lake & Yuba Canal Co. v. Superior Court, 66 Cal. 311, 5 Pac. 490) is equally applicable to the facts here.

Counsel for the moving party is, I think, mistaken in saying, as he does, that the attorney of record for the International Company of Mexico ceased to represent that corporation in the action immediately upon the entry of the judgment against it. The deposition of Mr. Fuller was taken upon this motion. In it he testifies that, subsequent to the entry of that judgment, he obtained, on the part of the judgment debtor, several extensions of time in which to prepare a bill of exceptions, and advised the defendant of the time within which the bill of exceptions must be prepared, and that such extensions of time were procured in pursuance of an understanding with the defendant company that it should have the opportunity to appeal, in the event it wished to do so. It further appears from the deposition of Mr. Fuller that prior to the month of March, 1892, he was under a regular

retainer from the International Company of Mexico, but that in that month it was arranged between himself and Sir Edward Jenkinson, who was then president of the International Company, and chairman of the board of directors of the Mexican Land & Colonization Company, Limited, that after the 1st day of April, 1892, Mr. Fuller should not be paid a regular, stipulated salary for attending to the law business of those companies in California, but should be paid for each item of service as it arose, and that for the Bates case he should have a certain sum, to include all services up to the rendition of the verdict and judgment in that case, whenever those events should occur, but that that sum should not include his services on appeal to the circuit court of appeals, beginning with the preparation of the bill of exceptions. It further appears from the deposition of Mr. Fuller that it was understood between himself and Sir Edward Jenkinson that, in the event the Bates case should be taken to the appellate court, he (Fuller) should represent the International Company of Mexico, and that he should attend to all other law businss of both companies in the state of California, indefinitely. The concluding clause of section 714, supra, that "no judgment debtor must be required to attend before a judge or referee out of the county in which he resides," does not, I think, apply to a foreign corporation. Under the circumstances appearing in the case, I think the service of the order in question upon Mr. Fuller should be held sufficient; and the present motion to vacate the order of March 16, 1896, is denied.